556 A.2d 462

**COMMONWEALTH of Pennsylvania**

v.

**Darryl E. WAGNER, Appellant.**

Superior Court of Pennsylvania.

Argued Oct. 13, 1988.

Filed April 6, 1989.

David R. Lynch, Assistant Public Defender, West Chester, for appellant.

Nicholas J. Casenta, Jr., Assistant District Attorney, Downingtown, for Com., appellee.

Before ROWLEY, WIEAND and BECK, JJ.

BECK, Judge:

Darryl Wagner was found guilty by jury of rape (accomplice liability), indecent assault (accomplice liability), and involuntary deviate sexual intercourse (accomplice liability). His post-verdict motions having been denied, he appeals.

The pertinent facts are as follows. The victim carrying her fourteen month-old son was walking to her parents' home when Darryl Wagner called to her from his car and offered her a ride, which she accepted. She was acquainted with Darryl through her husband. Two of his friends were in the car with Darryl. The party drove to the home of the victim's parents. No one was at home. Darryl then asked the victim if she would like to take a ride. She agreed. After the victim's son started to cry, they drove back to the home of the victim's parents, who had returned. The victim left the child with them. The victim then went for a drive with Darryl and his friends, who were drinking beer. The victim had one beer and stated that she had to go to the bathroom. Darryl stopped the car in a secluded field. Once in the field, Darryl told the victim that he needed to talk about his wife, with whom he had argued, and that he "needed someone else." Darryl started to kiss victim, removed her clothes, and the two had consensual intercourse. When Darryl and the victim returned to the car, the party of four drove off in search of more beer. On the way to the store, Darryl spotted his two brothers who said they had beer. The group then returned to the field along with Darryl's brothers.

When the beer supply ran out again, one of Darryl's brothers and Darryl's two friends drove off to replenish the supply. Darryl and his brother Douglas remained in the field with the victim. Douglas began kissing the victim, who pushed him away. As Darryl held the struggling victim down by her arms, Douglas performed oral sex upon the victim and had intercourse with her.

Darryl appeals the judgment of sentence and raises four issues. Since the first issue is dispositive, we will not address the remaining ones. Darryl asserts that the trial

judge erred in refusing to permit him to testify about an alleged blackmail offer. The offer was made to his family by an acquaintance of the victim, Billy Jean Guinn. She contacted Darryl's mother, Hazel Mullens. She claimed that the victim would drop the charges against her two sons if Mullens paid Guinn $1,000.00. Darryl admits that after charges were lodged against him he fled the jurisdiction. He asserted that the blackmail was a factor in his fleeing the jurisdiction and that the testimony about the blackmail was essential to rebut the inference that his flight reflected a consciousness of guilt.

At trial, evidence of Darryl's flight was placed on record by the Commonwealth through the testimony of Trooper Yoder and two supervisors who worked for Darryl's former employer. Trooper Yoder, the investigating officer, testified that he was unable to arrest the Wagner brothers because he could not locate them. The Commonwealth underscored Darryl's flight when it introduced the testimony of the two supervisors who stated that Darryl was absent from work during the relevant period of time. The idea of the alleged blackmail also entered the prosecution's part of the case in the cross-examination of the victim. The victim was asked whether she made any statement to Darryl or his family that in exchange for money she would not report the rape. She responded "No. That was not my idea."

Darryl was asked on direct examination how he learned of the charges against him. He began to reply that Billie Jean Guinn had been to his house to see his mother. The prosecutor objected, and after a sidebar discussion, the objection was sustained. Darryl later responded that he left the area approximately a week after learning of the charges against him. When asked why he left, Darryl stated that he believed he would be incarcerated even if he was innocent.

Darryl asserts that he should have been given the chance to explain the alleged blackmail attempt because: (1) Guinn's conversation with his mother was the way in which he learned that charges were being brought against him;

and (2) the alleged blackmail attempt influenced his decision to leave the area. Darryl argues that the Commonwealth "opened the door" to such testimony when, during direct examination, Trooper Yoder testified that he was unable to locate Darryl and his two supervisors testified that he was absent from work. He contends that testimony relating to the alleged blackmail attempt was essential in order for him to refute the possible inference that he left the area because of consciousness of guilt.

We recognize that the decision whether or not to admit evidence is within the discretion of the trial court, and will not be reversed absent an abuse of that discretion. *Commonwealth v. Underwood*, 347 Pa.Super. 256, 500 A.2d 820 (1985). Evidence is relevant if it tends to establish a fact material to the case or tends to make facts at issue more or less probable. *Commonwealth v. Jackson*, 336 Pa.Super. 609, 486 A.2d 431 (1984). Reversal based on the exclusion of evidence requires a showing of abuse of discretion as well as a showing of actual prejudice. *Commonwealth v. Sweger*, 351 Pa.Super. 188, 505 A.2d 331 (1986).

As long ago as 1938, this Court recognized that "it is well settled that evidence of flight following the commission of a crime is admissible as having a tendency to prove the guilt of accused." *Commonwealth v. Myers*, 131 Pa.Super. 258, 264, 200 A. 143, 146 (1938). *See also Commonwealth v. Graham*, 248 Pa.Super. 406, 407, 375 A.2d 161, 162 (1977); *Commonwealth v. Liebowitz*, 143 Pa.Super. 75, 83, 17 A.2d 719 (1940). In *Myers*, this Court noted that such evidence is equally admissible "where the accused flees after he has been arrested and admitted to bail." *Id.* The court noted that when evidence of flight is introduced:

It would then be competent for appellant to show, if he could, that the reason for his avoidance was not a consciousness of guilt, but that it was due to some other cause consistent with his innocence, and to show what that cause was.

200 A. at 146, 131 Pa.Super. at 265.

In the instant case, Trooper Yoder's and the two supervisors' testimony raised the issue of Darryl's flight and the

inference that the flight reflected evidence of a consciousness of guilt. Once this testimony was introduced, it was necessary to permit Darryl to offer testimony about the alleged blackmail attempt to show "that the reason for his avoidance was not a consciousness of guilt, but that it was due to some other cause consistent with his innocence, and to show what that cause was." *Id.*

In ruling on appellant's post-verdict motions, the court held that the blackmail testimony was legally irrelevant because there was "no nexus to tie in that alleged blackmail with the victim." In addition, the court explained that when Darryl was later asked why he left the area he responded: "because I knew if I was innocent or not they would put me in jail." Based upon these facts, the trial court concluded that "any possible probative value [of the blackmail attempt] was grossly outweighed by the unfair prejudice that would be visited upon the Commonwealth." The trial court's ruling is contrary to established law in Pennsylvania.

Although we have located no recent caselaw addressing this issue, it is clear from reading *Commonwealth v. Myers* that where the Commonwealth offers testimony of a defendant's flight, the defendant must be permitted to offer his explanation to rebut the inference that flight reflects consciousness of guilt. Appellant in this case was not given such an opportunity.

The trial court correctly noted that when Darryl was asked why he left the area, he did not mention the alleged blackmail threat. We point out, however, that he was asked this question after the court ruled that the blackmail testimony was inadmissible. He clearly could have concluded that it was improper for him to mention the blackmail threat. Furthermore, Darryl's statement "I knew if I was innocent or not they would put me in jail", cannot be said to be inconsistent with the possible explanation that he fled the area because of a threat of blackmail. For example, Darryl's statement could be interpreted as indicating his belief that because he could not pay the blackmail he would

be unjustly convicted on the basis of the blackmailer's false testimony regarding the crime even though the blackmailer had no direct knowledge of the crime. Therefore, we find no basis for the trial court's conclusion that Darryl's explanation of why he fled rendered the proffered blackmail testimony irrelevant. Whatever the explanation of how the blackmail threat induced his flight, Darryl had a right to offer it to rebut the inference of consciousness of guilt. The strength or weakness of his testimony on the blackmail question could be tested through cross-examination.

The trial court also noted that the blackmail testimony was inadmissible since there was no demonstrated nexus between the blackmail attempt and the victim. No nexus need be shown here. The blackmail testimony does not relate directly to the commission of the crime, but relates to matters external to the crime itself. It is relevant as to Darryl's thought processes after the crime, i.e., the reason he thought he had to flee the jurisdiction.

For the above reasons we conclude that the trial court erred in refusing to admit testimony relating to the alleged blackmail.

As we have noted, reversal on the basis of exclusion of evidence requires not only a showing of abuse of discretion, but also requires a showing of resulting prejudice to the defendant. *Commonwealth v. Sweger, supra.* Appellant was clearly prejudiced in that he was not given the opportunity to rebut the inference of consciousness of guilt through flight.

The judgment of sentence is vacated and the case remanded for a new trial consistent with this opinion. Jurisdiction is relinquished.

WIEAND, J., files concurring opinion.

WIEAND, Judge, concurring:

The Superior Court has frequently written, as does the majority in this case, that "whether or not to admit evidence is within the discretion of the trial court." In my judgment,

however, this is not a wholly accurate statement of the law. The law of evidence is made up of a body of rules. There are rules pertaining to hearsay evidence; there are rules pertaining to relevancy; there are rules pertaining to privileged communications; there are rules pertaining to the competency of witnesses, including witnesses who have been convicted of perjury, witnesses who have been hypnotized, and witnesses who are insane; there are rules pertaining to opinion testimony; there are rules requiring the authentication of documents; there are rules pertaining to the need to produce the "best evidence"; there is a rule pertaining to the non-admissibility of parol evidence; there are rules which require the exclusion of evidence which has been illegally obtained; there is an exclusion which has been created by the Dead Man's Act;[1] there is a rule which excludes evidence of prior sexual acts by victims of rape;[2] there are rules pertaining to the impeachment and corroboration of witnesses; there are rules pertaining to the admissibility of character evidence; and there are many other rules which govern the admissibility of evidence during trials in the courts of this Commonwealth. To be sure, some of these rules require a trial court to exercise discretion. Other rules of evidence, however, leave little or no room for the exercise of discretion. To receive evidence excluded by a rule of evidence is error; the trial court may not, in its discretion, ignore the rule.

Professors Packel and Poulin, in discussing the relationship between the trial court's discretion and the various rules of evidence, have said:

> In reviewing the trial court's rulings as to the admission or exclusion of evidence and the conduct of the trial, the appellate court will accord a large measure of discretion to the trial court. As the Supreme Court said in *Com. v. Claypool* [, 508 Pa. 198, 203–204, 495 A.2d 176, 178 (1985)]:

1. See: 42 Pa.C.S. § 5930.
2. See: 18 Pa.C.S. § 3104.

[W]e are guided by the rule of law that the admissibility of evidence is a matter addressed to the sound discretion of the trial court, and that an appellate court may reverse only upon a showing that the trial court abused its discretion.

Our courts have not clarified what is meant by the term "discretion of the trial court." It might be read to mean that the trial judge is controlled by no fixed rules of evidence or trial procedure, but may act in each case as his judgment indicates. It seems clear that the term does not mean that there are no rules of evidence—there are rules, and failure to observe them will be error. For example, if a trial court admits hearsay which is not subject to an exception, it will be found to have committed error. As the Superior Court said in *Com. v. Haber* [, 351 Pa.Super. 79, 83–84, 505 A.2d 273, 276 (1986) ]:

Evidentiary rules, including the hearsay rule, have a 'raison d'etre'. Experience has taught us that trials conducted in accordance with such rules increase the likelihood of a fair and just resolution of the issues by the trier of fact. Otherwise we would jettison the lot of them.

There is a more satisfactory explanation of the term "discretion of the trial court" as it applies to the law of evidence. Many of the decisions which a trial court must make are not pure questions of law. Often, the trial court is required to make a finding of fact or an estimate of the impact of evidence on the jury. The term "discretion of the trial court" reflects a recognition by the appellate courts that in many cases the appellate court will be unable to make a more accurate fact finding or estimate of the impact of evidence than that made by the trial court. In these cases, the appellate court is not deferring to the trial court's "discretion" but to the trial court's judgment based on hearing the evidence and seeing the witnesses and the jury. For example, in many cases the admissibility of evidence will turn on the determination of a preliminary question of fact. Where the appellate court defers to the discretion of the trial court,

it may simply be deferring to the fact finding of the trial court. In many cases, the law of evidence requires the trial court to weigh the probative value of evidence against its prejudicial danger. When the appellate court defers to the trial court's discretion, it may simply be a recognition of the fact that its judgment may be no more accurate than that of the trial court. In some cases, the law of evidence requires the trial court to determine whether conduct will unfairly prejudice the jury, or whether a cautionary or limiting instruction will be effective. Appellate courts recognize that their judgment on these matters will often be no more accurate than that of the trial court.

Packel and Poulin, Pennsylvania Evidence, Ch. I, § 108.1, at 28–29 (1987) (footnotes omitted). Cf. 29 Am.Jur.2d, Evidence, § 249, at 297 ("It is obvious that a matter may be relevant to the issues of the case and yet incompetent and inadmissible as evidence by reason of established rules of evidence. . . .").

In my judgment, the courts should stop making the misleadingly broad statement that the admissibility of evidence is discretionary with the trial court. The admissibility of evidence is determined by the application of rules of evidence. Issues of relevancy, however, frequently require the exercise of discretion by a trial court, as do instances in which relevancy of evidence must be balanced against the prejudice to be caused thereby.

The issue in the instant case, as presented to the trial court, was not solely one of relevancy but also an issue of hearsay. The record shows that the defense attempted to show by the testimony of appellant, the accused, that his brother had told him that a third person, Billie Jean Guinn, had demanded money from appellant's mother in order to avoid the accusation of rape being made against appellant. This line of inquiry proceeded as follows:

Q. How did you hear about these accusations against you?

A.  I went up to my mother's house, and my brother, he told me Billie Guinn came up to the house and said—

MR. HARMELIN:  Objection.

THE COURT:  State your ground.

MR. HARMELIN:  It's going to call for hearsay, and I think it's going to get into an area that is inappropriate.

After the above objection had been lodged by the prosecuting attorney, a side-bar discussion was held during which defense counsel made the following offer of proof:

MR. LYNCH:  Your Honor, I believe that what he would say is something to the effect that Billie Guinn told him, at that time, that if they didn't pay $1,000, that they were going to report rape to the police.  This is how he found about these accusations against him, and I would develop that to explain why he left the area.

Thereafter, the trial court sustained the prosecutor's objection without stating specifically the reason for the ruling.

In my judgment, appellant's response to the question asked was not excludable on the grounds that it was improper hearsay testimony.  This testimony was not being offered for the truth of the matter asserted but, rather, to explain appellant's course of conduct in fleeing the jurisdiction after hearing from his brother that an extortion demand had been made.  "It is well settled that an out-of-court statement offered to explain a course of conduct is not hearsay." *Commonwealth v. DeHart*, 512 Pa. 235, 254, 516 A.2d 656, 666 (1986).  See also: *Commonwealth v. Sneed*, 514 Pa. 597, 526 A.2d 749 (1987); *Commonwealth v. Cruz*, 489 Pa. 559, 414 A.2d 1032 (1980); *Commonwealth v. Lewis*, 314 Pa.Super. 298, 460 A.2d 1149 (1983).  See generally: Packel and Poulin, *supra*, Ch. VIII, § 801.2.

Following argument on appellant's post-trial motions, the trial court opined that appellant's proffered testimony concerning the extortion demand had been properly excluded at trial for the following reasons:

With respect to the first argument propounded on behalf of the defendant Mr. Wagner as to the tie-in with the alleged Ms. Guinn, blackmail with the victim here, I

note that, from the sidebar discussion set forth at pages 140 through 143 of the transcript, there is in fact no nexus to tie in that alleged blackmail with the victim and thus in my view it was legally irrelevant. A fortiori was that the case when one observes at page 145 of the transcript the statement adduced by Mr. Lynch from his client Mr. Wagner as to why he left the area and his client under oath says it had the nothing to do with blackmail. It doesn't say it in so many words but he gives a reason. He says at line 7, "Question: Darryl, after you found out about these accusations, did you leave the area? Answer: After about a week, yes.

"Question: And why did you leave? Answer: Because I knew if I was innocent or not that they would put me in jail. That is the way it usually works, you are guilty until you are found innocent." Then it goes on from there.

That is the sole reason asserted by the defendant for his reason for leaving the area: his fear that there is an alleged presumption of guilt in this county. There is no mention whatsoever of blackmail.

That, plus the inability in any way to tie in this third party, alleged tertiary blackmail occasion with the victim, caused the trial judge to determine that any possible minuscule probative value thereof was grossly out-weighed by the unfair prejudice that would be visited upon the Commonwealth from the introduction of such evidence and thus objection thereto was sustained.

Thus, the trial court found it significant that appellant had been unable to tie the extortion demand to the victim.[3]

I am unpersuaded by the trial court's rationale that appellant's proffered testimony was legally irrelevant. The Commonwealth was permitted to introduce evidence that appellant had fled from the jurisdiction after learning of the accusation against him. "When a person commits a crime,

**3.** The victim had been asked about such a demand while being cross-examined and had denied being a part of any demand for money from appellant's family.

knows that he is wanted therefor, and flees or conceals himself, such conduct is evidence of guilt, and may form the basis in connection with other proof from which guilt may be inferred." *Commonwealth v. Osborne*, 433 Pa. 297, 302, 249 A.2d 330, 333 (1969), quoting *Commonwealth v. Coyle*, 415 Pa. 379, 393, 203 A.2d 782, 789 (1964). After the prosecution has offered evidence of the defendant's flight, however, "the defendant is entitled to the benefit of any explanation which he may offer as to why he fled or concealed himself. . . . That the explanation for the defendant's flight is fantastic does not affect its admissibility; rather, the reasonableness of the defendant's explanation is for the jury in determining the weight to be attached to the circumstances of his flight." 29 Am.Jur.2d, Evidence, § 283, at 331–332 (footnote omitted). See: *Commonwealth v. Myers*, 131 Pa.Super. 258, 265, 200 A. 143, 146 (1938).

In the instant case, appellant was prevented from offering to the jury his explanation for flight. This testimony was relevant and should have been allowed by the trial court. Thus, even though determinations of relevancy frequently require the exercise of discretion by the trial court, I would hold, under the facts of this case, that an abuse of discretion occurred. For the foregoing reasons, I concur in the result reached by the majority.