580 A.2d 25

**COMMONWEALTH of Pennsylvania**

v.

**William FRANKLIN, Appellant.**

Superior Court of Pennsylvania.

Submitted May 29, 1990.

Filed Aug. 27, 1990.

John F. Stullmun, Philadelphia, for appellant.

Donna G. Zucker, Asst. Dist. Atty., Philadelphia, for Com., appellee.

Before OLSZEWSKI, CERCONE and BROSKY, JJ.

CERCONE, Judge:

This is an appeal from an order denying appellant's petition for relief under the Post Conviction Hearing Act

(the "PCHA"), 42 Pa.C.S.A. §§ 9541–9551.[1] For the reasons set forth below, we affirm.

Appellant, William Franklin, was arrested because of an incident involving the murder of Joseph Hollis and the attempted murder of John Pickens. The facts adduced at trial, which were set forth by the lower court in an opinion filed May 24, 1983, may be summarized as follows. The relevant crimes were committed during a meeting on October 22, 1976 which occurred between two rival syndicates engaged in illegal narcotics operations, the "North Philadelphia" and "West Philadelphia" groups. The purpose of the meeting allegedly was to reconcile differences between the two syndicates which had arisen two days earlier when Hollis insulted Alfred Clark, the leader of the North Philadelphia organization, by questioning his credentials as a "real gangster" and slapping him in the face with a gun.

The meeting on October 22, 1976 was attended by approximately ten people. During the meeting, appellant and Major Tillery, a member of the North Philadelphia syndicate, drew weapons from underneath a pool table and shot Hollis and Pickens; Hollis died as a result of the shooting. Emmanuel Claitt, also a member of the North Philadelphia group, testified that he had no prior knowledge of the shooting and that he was standing by the door during the meeting to prevent anyone from entering or leaving. Based on information supplied by Claitt, appellant was arrested four years later. Claitt's evidence was given in return for leniency from the Commonwealth relating to other open cases.

Following a trial which began on December 1, 1980, a jury found appellant guilty of first degree murder,[2] posses-

1. The PCHA has been modified in part, repealed in part and renamed the Post Conviction Relief Act ("PCRA") by the Act of April 13, 1988, 42 Pa. C.S.A. §§ 9541–9546. The new provision applies to all actions for collateral relief instituted on or after the effective date. The instant petition was filed prior to that date and will be evaluated under the PCHA.

2. 18 Pa. C.S.A. § 2502(a).

sion of instruments of crime generally,[3] criminal conspiracy,[4] and aggravated assault.[5] Appellant's post-verdict motions were filed and argued by trial counsel. Subsequently, appellant raised allegations of ineffectiveness and new counsel assumed representation. Appellant was given additional time to file and brief post-trial motions *nunc pro tunc*. However, following a second hearing, all of appellant's post-verdict motions were denied. On July 7, 1982, appellant was sentenced to serve life imprisonment for the murder conviction, concurrent terms of five (5) to ten (10) years for criminal conspiracy and two and one-half (2½) to five (5) years on the weapons charge, as well as a consecutive term of five (5) to ten (10) years for aggravated assault. This judgment of sentence was affirmed on direct appeal by *Commonwealth v. Franklin*, 339 Pa.Super. 615, 488 A.2d 1163 (1985). Allocator was denied by the Pennsylvania Supreme Court on June 24, 1985.[6] In an opinion filed December 22, 1989, the lower court indicates that appellant also filed a petition for writ of habeas corpus in the United States District Court for the Eastern District of Pennsylvania. The lower court states that this petition was withdrawn on June 6, 1986.

On June 24, 1986, appellant filed a petition under the PCHA and new counsel was appointed to write a brief for appellant. Prior to the hearing conducted on appellant's claims, new counsel was once again appointed. Following the hearing, the lower court held its decision so that additional briefs could be submitted. Ultimately, the lower court denied collateral relief to appellant and the instant timely appeal followed which presents five questions for our consideration:

1. Was William Franklin denied the right to the effective assistance of counsel because of his trial counsel's

3. *Id.* § 907(a).

4. *Id.* § 903.

5. *Id.* § 2702.

6. The lower court docket entry incorrectly states that allocatur was denied on August 13, 1989.

unreasonable failure to secure and present the testimony of an exculpatory witness?

2. Was Franklin deprived of his constitutional right to present a defense because he was prevented from introducing vital evidence at trial, namely an exculpatory statement made by the victim of the shooting?

3. Was Franklin deprived of the right to confrontation because he was not permitted to cross-examine the Commonwealth's primary witness on the contents of an exculpatory statement made by the victim of the shooting?

4. Did the trial judge err in failing to charge the jury that Emmanuel Claitt, the sole witness against Franklin, was an accomplice to the crime with which Franklin was charged?

5. Was Franklin repeatedly denied effective assistance of counsel because both trial and appellate counsel neglected to pursue admission into evidence of the victim's exculpatory statement and to request an accomplice charge?

We shall address appellant's claims *seriatim*, noting initially that we are governed by a narrow scope of review when examining a PCHA court's grant or denial of relief. *Commonwealth v. McClucas*, 378 Pa.Super. 202, 548 A.2d 573 (1988). "We will not disturb the findings of the PCHA court unless they have no support in the record." *Id.*, 378 Pa.Superior Ct. at 206, 548 A.2d at 575.

 It is well settled that the burden of establishing ineffective assistance of counsel rests upon the appellant because counsel's stewardship is presumed to be effective. *Commonwealth v. McNeil*, 506 Pa. 607, 487 A.2d 802 (1985); *Commonwealth v. Smith*, 380 Pa.Super. 619, 552 A.2d 1053 (1988). Appellant's obligation is to demonstrate both that "the omission or commission by counsel was arguably ineffective *and* the likelihood that he was prejudiced as a result." *Commonwealth v. Pierce*, 515 Pa. 153, 161, 527 A.2d 973, 976 (1987) (emphasis in original). The initial inquiry in an ineffectiveness claim is always "wheth-

er the issue/argument/tactic which counsel has foregone and which forms the basis for the assertion of ineffectiveness is of arguable merit; for counsel cannot be considered ineffective for failing to assert a meritless claim." *Commonwealth v. Durst*, 522 Pa. 2, 4, 559 A.2d 504, 505 (1989). If this threshold is met, it must next be determined that the particular course followed by counsel had no reasonable basis designed to effectuate his client's interests. *Id.* The final inquiry is to establish the precise manner in which counsel's commission or omission prejudiced the appellant. *Id.* In making assertions of ineffectiveness, an appellant must allege sufficient facts upon which a reviewing court can conclude that trial counsel may have been ineffective because the appellate courts will not consider such claims in a vacuum. *Id.; Commonwealth v. Pettus*, 492 Pa. 558, 424 A.2d 1332 (1981). We note additionally that counsel will not be deemed ineffective for failing to predict a change in the law. *Commonwealth v. Davis*, 518 Pa. 77, 83, 541 A.2d 315, 318 (1988).

Appellant's first contention is that trial counsel was ineffective for failing to secure at trial the testimony of one of the victims, John Pickens, who allegedly would have stated that appellant "did not do the shooting." To obtain relief on an ineffectiveness claim based upon former counsel's failure to call a witness, appellant is required to establish that: (1) the witness existed; (2) the witness was available; (3) counsel was informed of the existence of the witness or counsel should otherwise have known of him; (4) the witness was prepared to cooperate and testify for appellant at trial; and (5) the absence of the testimony prejudiced appellant so as to deny him a fair trial. *Commonwealth v. Petras*, 368 Pa.Super. 372, 376, 534 A.2d 483, 485 (1986). Even assuming, *arguendo*, that appellant's proffer has met requirements (1), (3), and (5),[7] testimony at

7. As our analysis concedes, for the sake of this particular argument, that Mr. Pickens may have been able to provide exculpatory testimony, we need not consider the merits of whether the witness' hearsay statement should have been considered by the PCHA court. Nor is it

appellant's PCHA hearing shows unequivocally that Pickens could not be located at the time of appellant's trial, that he was not prepared to cooperate with the defense, and that he was unwilling to testify on appellant's behalf.

Trial counsel explained at the PCHA hearing that he had contacted counsel for Mr. Pickens, Joseph Santiguida, Esquire, regarding the possibility of having Mr. Pickens testify at appellant's trial. N.T. 10/5/88 at 9–10. Mr. Santiguida informed trial counsel that because of Mr. Pickens' involvement in the events underlying the criminal charges filed against appellant, he would have to advise his client not to testify for appellant. *Id.* at 10. A witness who chooses to invoke his Fifth Amendment right not to testify is "unavailable." *See, e.g., Commonwealth v. Rodgers,* 472 Pa. 435, 452–457, 372 A.2d 771, 779–781 (1977) (per Roberts, J., with one Justice concurring and two Justices concurring in the result); *Commonwealth v. Bellacchio,* 296 Pa.Super. 468, 474–475, 442 A.2d 1147, 1149–1150 (1982). As the trial court was not required to determine whether an attempt by Mr. Pickens to assert his Fifth Amendment rights was justified, we are not now in a position to rule that the witness was "unavailable" in this sense.[8] However, under

necessary to discuss in the present context whether the absence of Pickens' testimony was prejudicial to the appellant.

8. In general, a witness may invoke the privilege against self-incrimination if his conviction has not been finalized by the imposition of sentence. *Commonwealth v. Sanabria,* 478 Pa. 22, 29, 385 A.2d 1292, 1295 (1978); *Commonwealth v. Garland,* 475 Pa. 389, 395, 380 A.2d 777, 779–780 (1977). The record clearly establishes that Mr. Pickens potentially was liable to prosecution based on his distribution of illegal drugs, which was the source of his involvement in the altercation with appellant which underlies the instant appeal. Under these circumstances, it is highly likely that the witness validly could have invoked his right not to testify. *See Commonwealth v. McGrogan,* 523 Pa. 614, 621, 568 A.2d 924, 929 (1990) ("Where other evidence tends to implicate [a potential] witness in criminal activity, the witness may have justification for invoking his Fifth Amendment privilege to prevent being harmed by his own words.") *See also Commonwealth v. Rolon,* 486 Pa. 573, 406 A.2d 1039 (1979) (the trial court may overrule a claim of constitutional privilege only where the record clearly establishes that the witness is mistaken in believing self-incrimination will occur and that his testimony cannot possibly have such a tendency).

*Commonwealth v. Petras, supra,* we need merely consider whether the record indicates that the potential witness was physically available and whether he had shown that he was prepared to cooperate and was willing to testify for appellant at trial.

The record discloses that Mr. Pickens had apparently fled the jurisdiction at the time of appellant's trial. Trial counsel indicated to the lower court at the hearing on appellant's

Appellant's argument that the witness could not reasonably have feared prosecution in connection with the events that caused him to be a victim is simply inapposite. Even if Mr. Pickens' liability for prosecution stemmed from acts other than those directly concerned with the charges filed against appellant, the witness properly could have asserted his rights against self-incrimination. *See, e.g., Commonwealth v. Carrera,* 424 Pa. 551, 227 A.2d 627 (1967) (wherein an unmarried woman was permitted to invoke her Fifth Amendment privilege in connection with a grand jury investigation of a third party's abortion practice because the witness' answers to questions potentially would have incriminated her on charges of fornication). As the court ruled in *Carrera,* "it is not necessary that a real danger of prosecution exist to justify the exercise of the privilege against self-incrimination. It is sufficient if the person questioned has reasonable cause to apprehend such danger." *Id.,* 424 Pa. at 553, 227 A.2d at 629. Because the record clearly indicates that Mr. Pickens' involvement with appellant stemmed from his activities in connection with the distribution of illegal drugs, we cannot say that the witness would have had no reasonable basis to fear that his testimony could prove self-incriminating.

We note additionally that appellant is unjustified in his reliance on *Government of the Virgin Islands v. Smith,* 615 F.2d 964 (3d Cir.1980) for the proposition that the trial court would have been required to grant Mr. Pickens use immunity so he could testify for appellant. Although the Pennsylvania Supreme Court had not ruled on the precise question presented by appellant at the time of his trial, the court subsequently chose not to follow the lead provided by *Smith.* *See Commonwealth v. Lacey,* 344 Pa.Super. 576, 582, 496 A.2d 1256, 1260 (1985) (Pennsylvania's appellate courts are not bound by an inferior federal court's interpretation of state law). *See also Moore v. Sims,* 442 U.S. 415, 428, 99 S.Ct. 2371, 2379, 60 L.Ed.2d 994 (1979) ("state courts are the principal expositors of state law"). In *Commonwealth v. Johnson,* 507 Pa. 27, 487 A.2d 1320 (1985), our supreme court held that witness immunity in Pennsylvania is governed by statute and that a trial court has no inherent power to grant use immunity without the approval of the prosecutor. *Id.,* 507 Pa. at 32, 487 A.2d at 1322–23. At the time of appellant's trial, the relevant statutory enactment limited requests for judicial use immunity solely to the prosecution. *See* 42 Pa. C.S.A. § 5947. Trial counsel cannot be found ineffective for failing to pursue a right which appellant was not entitled to exercise. *See Commonwealth v. Durst, supra.*

post-trial motions that he had made extensive, albeit unsuccessful, efforts to locate Mr. Pickens in late 1980. N.T. 4/7/81 at 9. The witness could not be reached at his last known address, the home of his mother. *See* Exhibit D–2. The record certified on appeal contains a deposition taken on February 19, 1988, in which Mr. Pickens' mother, Delores Pickens, stated that her son has not lived with her since some time in the late 1970's, that she has not known his whereabouts since that time, and that she did not know where he lived at the time of the deposition. *Id.* Mrs. Pickens also deposed that, although her son has contacted her from time to time, she "knows better than to ask" him questions relating to his whereabouts. *Id.* The deposition clearly indicates that in late 1980, the time of appellant's trial, Mrs. Pickens did not know the location of her son and was not in a position to initiate contact with him.

The record plainly substantiates a finding that Mr. Pickens could not be located at the time of appellant's trial,[9] that he was unwilling to cooperate with the defense, and that he did not wish to testify for appellant. We therefore affirm the PCHA court's ruling that trial counsel's unsuccessful efforts to secure the witness' testimony did not constitute ineffectiveness. *See Commonwealth v. McClucas, supra; Commonwealth v. Vesay,* 318 Pa.Super. 320, 327, 464 A.2d 1363, 1367 (1983) (an appellate court will not disturb the PCHA court's findings where they are supported by the record).

■ The second claim made by appellant is that he was deprived of due process of law because he was prevented from introducing evidence vital to his defense. The grava-

---

**9.** We are cognizant that Commonwealth witness Emmanuel Claitt testified that he had seen Mr. Pickens "in and around town" at the time of appellant's preliminary hearing in June of 1980. N.T. 12/3/80 at 3.73. Mr. Claitt also stated that Mr. Pickens actually attended the preliminary hearing. *Id.* However, the relevant inquiry is not whether Mr. Pickens was available at the time of the preliminary hearing, but whether he could be located at the time of appellant's trial in December of 1980. We are unable to agree with appellant that because the witness' location was known in June of 1980 that he was available to testify at a trial held in December of 1980.

men of appellant's complaint is that he was not permitted to introduce a hearsay statement made by Mr. Pickens to the police officer who investigated the shooting underlying appellant's conviction. When he was questioned the morning after the shooting, Mr. Pickens named two men who had shot him, and upon viewing a photograph of appellant, stated that appellant was not his assailant.[10] Appellant argues that the trial court improperly applied a "mechanistic" interpretation of the rules of evidence and incorrectly excluded Pickens' statement. Although appellant concedes that the statement in question is hearsay, he contends that it should have been admitted under the "due process exception" to the hearsay rule. Appellant has summarized his argument as follows:

> If hearsay testimony is critical to the defense and exhibits sufficient indicia of reliability, the state's interest in excluding the testimony must yield to the right of the accused to present a defense. Pickens' statement satisfies these criteria and ought to have been admitted by the trial judge.

Appellant's brief at 41–42.

The decision to admit or exclude evidence is within the discretion of the trial court, and will not be reversed absent an abuse of that discretion. *Commonwealth v. Wagner*, 383 Pa.Super. 128, 131, 556 A.2d 462, 463 (1989). "Reversal based on the exclusion of evidence requires a showing of abuse of discretion as well as a showing of actual prejudice." *Id., citing Commonwealth v. Sweger*, 351 Pa.Super. 188, 505 A.2d 331 (1986), *allocatur denied*, 513 Pa. 634, 520 A.2d 1385 (1987). In clarifying the meaning of "discretion of the trial court" in the context of determining whether to admit evidence, Judge Wieand explained that "[t]o receive evidence excluded by a rule of evidence is error; the trial

10. We note parenthetically that although Pickens' statement is exculpatory insofar as the aggravated assault charge filed against appellant because of his attack on Pickens is concerned, the declaration in no way exonerates appellant from the more serious charge of murdering Joseph Hollis. Likewise, the hearsay statement does not absolve appellant of criminal conspiracy or possession of instruments of crime.

court may not, in its discretion, ignore the rule." *Commonwealth v. Wagner, supra* 383 Pa.Super. at 134, 556 A.2d at 465 (Wieand, J., concurring). The Pennsylvania Supreme Court has stated that "[i]t is well settled in our law that hearsay evidence is inadmissible unless it qualifies under one of the recognized exceptions to that rule." *Commonwealth v. Smith,* 523 Pa. 577, 591, 568 A.2d 600, 607 (1989). Appellant has proffered no Pennsylvania statute or caselaw citing an exception applicable in this instance to the hearsay rule. Rather, he argues that certain United States Supreme Court precedent compels us to find that the trial court erred in its evidentiary ruling. We disagree, however, with appellant's interpretation of the Supreme Court's rulings.

Appellant cites *Pointer v. Texas,* 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965) for the proposition that a criminal accused has the right to confront and cross-examine witnesses. In *Pointer,* the Supreme Court reversed a conviction based on the introduction at trial of prior testimony from a missing witness who was not subject to cross-examination. While we agree with appellant that he had the right to confront and cross-examine the prosecution's witnesses, *Pointer* simply has no bearing on appellant's attempt to introduce inadmissible hearsay.

*Washington v. Texas,* 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967), also cited by appellant, is inapposite to the instant appeal. In *Washington,* the Court held that a criminal defendant was denied his Sixth Amendment right to compulsory process for obtaining witnesses because a Texas statute prohibited principals, accomplices or accessories in the same crime from being introduced as witnesses on each other's behalf. Appellant has not even argued that such a statute existed in Pennsylvania at the time of his trial. As previously discussed, the pertinent witness, Mr. Pickens, was physically unavailable at the time of appellant's trial. Under the circumstances of the instant case, we are unable to conclude that appellant was deprived of the right to compulsory process as contemplated by *Washington.*

The core of appellant's due process argument is based on *Chambers v. Mississippi*, 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973). In *Chambers*, the Supreme Court explained that the hearsay rule is grounded in the notion that "untrustworthy evidence should not be presented to the triers of fact." *Id.* at 298, 93 S.Ct. at 1047. The Court's general discussion of the hearsay rule and its exceptions stressed that not only the state, but the criminal accused also, "must comply with established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence." *Id.* at 302, 93 S.Ct. at 1049. As appellant correctly notes, *Chambers v. Mississippi* held that it was error for the trial court to exclude critical hearsay testimony to the effect that a third party had, on three separate occasions, spontaneously confessed to having committed the murder of which the petitioner stood accused. However, the Court emphasized the fact that the hearsay statements in question had originally been made, and were subsequently offered at trial, under circumstances that provided considerable assurance of their reliability. Each confession was made spontaneously to a close acquaintance shortly after the murder was committed; each was corroborated by other evidence in the case; each confession was both self-incriminatory and unquestionably against the penal interest of the declarant. *Id.* at 300–01, 93 S.Ct. at 1048. Most significantly, the declarant was present in the courtroom and under oath during the petitioner's trial. He therefore could have been cross-examined by the prosecution and his demeanor and responses could have been weighed by the jury. *Id.* at 301, 93 S.Ct. at 1049. In consideration of the totality of these indicia of reliability, the Court held that the "mechanistic" application of Mississippi's rules of evidence by the state court had deprived Chambers of his right to due process of law.[11] *Id.* at 302, 93 S.Ct. at 1049.

**11.** As the Supreme Court explained, the rules of evidence obtaining in Mississippi at the time of Chambers' trial forbade the admission of hearsay statements against the penal interest of the declarant, although hearsay statements against pecuniary interest were admissible.

We disagree with appellant's contention that the hearsay statement he attempted to introduce at trial was made under conditions of reliability similar to those present in *Chambers v. Mississippi, supra.* The ruling in *Chambers* is readily distinguishable from the instant case upon consideration of several particulars: although Pickens' statement was made shortly after the shooting in question, the statement itself was not against Pickens' penal interest, it was not uttered spontaneously to a "close acquaintance," and it was not spontaneously repeated on multiple occasions. Finally, for reasons previously discussed, Pickens was not present in the courtroom, was not available to the prosecution for cross-examination, and his demeanor was not subject to evaluation by the jury. Under the facts presented by appellant's case, we have no difficulty in holding that *Chambers v. Mississippi* does not compel us to overturn the ruling of the trial court on the admissibility of Pickens' hearsay statement.[12] The indicia of reliability which the *Chambers* Court emphasized as a necessity before requiring the admission of the hearsay statement simply are not present in the instant case. As the record contains no indication that the lower court committed abuse of discretion or error of law in its ruling, we find that appellant is not entitled to relief on this claim.

*Id.* at 298–300, 93 S.Ct. at 1047–48. At the same time, Mississippi also followed the "party witness" or "voucher" rule which prevented Chambers from impeaching his own witness, the declarant whose out-of-court confession was barred from admission under Mississippi's interpretation of the hearsay rule. The Supreme Court condemned the "voucher" rule as archaic, *id.* at 295–98, 93 S.Ct. at 1045–46, and concluded that the combined effect of Mississippi's "voucher" and hearsay rules had impermissibly worked to Chambers' detriment.

12. We are cognizant of appellant's argument that Pennsylvania courts have improperly limited *Chambers* to declarations against penal or social interest. Appellant cites *Green v. Georgia,* 442 U.S. 95, 99 S.Ct. 2150, 60 L.Ed.2d 738 (1979) for the proposition that the Supreme Court intended *Chambers* to cover all situations in which ordinarily inadmissible hearsay evidence is critical to the defense. However, the out-of-court statement under consideration in *Green* was a confession to a murder and was clearly against the declarant's penal interest. Further, the *Green* Court specifically limited its ruling to "the unique circumstances" of that particular case. *Id.* at 97, 99 S.Ct. at 2151–52.

▰▰▰▰▰

▰▰▰ Appellant next contends that he was deprived of his due process right to effectively cross-examine adverse witnesses. The gist of appellant's argument is that the exclusion of Pickens' hearsay statement deprived appellant of the opportunity to adequately cross-examine Emmanuel Claitt, the principal prosecution witness. We agree that Article 1, Section 9 of the Pennsylvania constitution and the Sixth Amendment to the federal constitution guarantee a criminal defendant the right to confront and cross-examine the witnesses against him. *Commonwealth v. Lloyd*, 523 Pa. 427, 429 n. 1, 567 A.2d 1357, 1358 n. 1 (1989). However, the Sixth Amendment right to confrontation extends only to witnesses whose testimony is actually presented at trial. *Commonwealth v. Paskings*, 447 Pa. 350, 354, 290 A.2d 82, 84 (1972); *Commonwealth v. Allen*, 287 Pa.Super. 88, 95, 429 A.2d 1113, 1116 (1981). *See Pennsylvania v. Ritchie*, 480 U.S. 39, 53, 107 S.Ct. 989, 999, 94 L.Ed.2d 40 (1987) (Per Justice Powell, joined by the Chief Justice and two Justices, and with one Justice concurring in the result) (the confrontation clause only guarantees the *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way and to whatever extent the defense might wish) (emphasized in the original).[13]

Appellant has cited precedent which supports the general proposition that a defendant may not be restricted by means of hyper-technical rules from adequately cross-examining a witness who actually testifies at trial against him. We find this argument inapt, however, as appellant does not claim that he was prevented from asking Emmanuel Claitt any particular question on any particular issue. Appellant merely makes the bald assertion that the exclusion of Pickens' hearsay statement prevented the defense from probing the credibility of "much of Claitt's testimony"

---

**13.** The Court also explained in *Ritchie* that nothing in *Davis v. Alaska*, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974), relied upon by appellant in the instant case, compelled the Commonwealth to override a Pennsylvania rule of evidence pertaining to statutory privilege simply because a defendant asserted a need for the protected information in order to proceed with a preferred method of impeachment. *Pennsylvania v. Ritchie*, 480 U.S. at 54, 107 S.Ct. at 999.

despite trial counsel's vigorous questioning regarding Claitt's criminal record and his plea bargain with the Commonwealth. Our research has not disclosed, nor has appellant provided a citation to, any authority which compels the admission of an unreliable hearsay statement for the purpose of discrediting a prosecution witness.

Although the right of confrontation is a fundamental right under both the state and federal constitutions, it is not absolute. *Commonwealth v. McCloud*, 457 Pa. 310, 312, 322 A.2d 653, 655 (1974). The state court is free to develop rules of evidence which may, on their face, "conflict with the confrontation clause, provided we closely examine the rules and determine that the integrity of the factfinding process is not infringed." *Commonwealth v. Kravontka*, 384 Pa.Super. 346, 351–52, 558 A.2d 865, 868 (1989) (*citing* U.S. Supreme Court precedent). In Pennsylvania, hearsay evidence is inadmissible unless it qualifies under one of the recognized exceptions to the hearsay rule. *Commonwealth v. Smith*, 523 Pa. at 591, 568 A.2d at 607. Such evidence may only be admitted in a Pennsylvania court after an evaluation of the particular circumstances of the case. *Commonwealth v. McCloud, supra.* Further, its admission is limited to "situations where the declaration is inherently trustworthy." *Commonwealth v. Kravontka*, 384 Pa.Super. at 352, 558 A.2d at 868, *citing Ohio v. Roberts*, 448 U.S. 56, 66, 100 S.Ct. 2531, 2531, 65 L.Ed.2d 597 (1980).[14] *Accord Chambers v. Mississippi, supra.* For the reasons set forth above, we have already concluded that Pickens' hearsay statement was not uttered under conditions exhibiting "indicia of reliability" that would enable us to consider the declaration "inherently trustworthy." Appellant has not even argued that the statement falls within an exception to the hearsay rule recognized in this Commonwealth.

---

**14.** *See Commonwealth v. Smith*, 523 Pa. at 592–93, 568 A.2d at 608. "The predicate supporting the rejection of hearsay evidence is its assumed unreliability because the declarant from which the statement originates is not before the trier of fact and therefore cannot be challenged as to the accuracy of the information sought to be conveyed."

Thus, we hold that appellant was not entitled, as a matter of right under either the state or federal constitutions, to introduce Pickens' hearsay statement for the purpose of discrediting Claitt.

 The fourth issue raised by appellant is that the trial court erred in failing to charge the jury that Emmanuel Claitt was an accomplice to the crimes with which appellant was charged. The Commonwealth correctly points out that appellant initially waived this issue by not raising it before the trial court. In *Commonwealth v. Rounds,* our supreme court explained that failure to raise issues pertaining to cautionary instructions in the trial court results in waiver. *Id.,* 510 Pa. 524, 527, 510 A.2d 348, 349 (1986). Appellant admits that no request for a jury charge was ever made before the trial court. However, he alleges that this very fact demonstrates that he received ineffective assistance of counsel. Appellant further contends that, even in the absence of a request, his due process rights entitled him to an accomplice charge as the circumstances surrounding Claitt's testimony should have alerted the trial court to the need for such a charge. Because of the context in which appellant raises the claim, we conclude that it is properly before this court.

 An accomplice charge with respect to a witness is warranted when evidence at trial either requires or permits the inference that the witness may have been a participant in the crime charged. *Commonwealth v. Howard,* 375 Pa.Super. 43, 50, 543 A.2d 1169, 1172 (1988), *allocatur denied,* 522 Pa. 573, 559 A.2d 35 (1989). It is reversible error for a trial court not to give an accomplice charge if the evidence permits an inference that a witness was an accomplice. *Commonwealth v. Smith,* 343 Pa.Super. 435, 447–48, 495 A.2d 543, 549 (1985). However, where the evidence does not permit the jury to infer that a Commonwealth witness was an accomplice, the trial court is empowered to conclude, as a matter of law, that the witness was not an accomplice. *Id.,* 343 Pa.Superior Ct. at 448, 495 A.2d at 549. In such a case, an accomplice charge is not required. *Id.*

As we stated previously, our narrow scope of review when examining a PCHA court's denial of relief requires us to affirm the lower court's findings unless they have no support in the record. *Commonwealth v. McClucas*, 378 Pa.Super. at 206, 548 A.2d at 575. We have carefully reviewed the record of the case *sub judice* and find that the evidence presented to the jury supports the PCHA court's conclusion that Emmanuel Claitt was not appellant's accomplice with regard to the crimes underlying the instant appeal. Testimony introduced at trial indicated that Claitt and appellant were members of the same gang and that Claitt had participated in the organization's drug selling activities. However, Claitt was not privy to the revenge plotted by appellant and Major Tillery against Joseph Hollis and his associates. Although Claitt admitted that he served as a look-out at the entry door to the gangs' "summit meeting," he had been instructed to leave his weapons in his car and was told that the only purpose of the conference was to straighten out the problems that had developed because Joseph Hollis insulted Alfred Clark. N.T. 12/3/80 at 3.32–3.68. As these facts do not support any conclusion of complicity by Claitt in appellant's conspiracy with Tillery to shoot members of the rival gang, trial counsel was not ineffective for failing to request an accomplice charge nor was there any necessity for the trial court to provide such a charge *sua sponte*. We therefore affirm the PCHA court on this issue.

Appellant's final contention is that he was repeatedly denied effective assistance of counsel because both trial and appellate counsel neglected to pursue the admission into evidence of Pickens' hearsay statement and because trial counsel neglected to request an accomplice charge. We agree with the Commonwealth that appellant's argument regarding this claim may be reduced to the assertion that prior counsel did not pursue the same mode of operation that present counsel would have chosen. Our previous discussion has addressed the contentions underlying appellant's final argument and found them meritless. Because

appellant was not entitled to introduce Pickens' unreliable out-of-court statement under any exception to the hearsay rule, it is of no consequence that trial counsel was unsuccessful in his attempts to do so under either the *res gestae* or business records exceptions. In connection with appellant's assertions that prior counsel were ineffective regarding the failure to request an accomplice charge, we have already concluded that appellant was not entitled to such a charge. We therefore can grant appellant no relief on this claim.

Order affirmed.