**Major TILLERY, Appellant**

v.

**Martin HORN, Dept. of Penna State Prisons.**

No. 03–3616.

United States Court of Appeals, Third Circuit.

Argued April 4, 2005.

Decided July 29, 2005.

Michael J. Confusione, (Argued), Hegge & Confusione, Haddonfield, NJ, for Appellant.

David C. Glebe, (Argued), Office of District Attorney, Philadelphia, PA, for Appellee.

Before BARRY, AMBRO and COWEN, Circuit Judges.

OPINION

COWEN, Circuit Judge.

Appellant Major Tillery appeals from an order of the District Court denying his petition for a writ of habeas corpus under 28 U.S.C. § 2254. He argues that the petition should have been granted because his trial counsel labored under an actual conflict of interest. We conclude that the claim is procedurally defaulted, and that Tillery has not established actual prejudice.

I.

As we write solely for the parties, we briefly review the procedural background. On May 29, 1985, following a jury trial, Tillery was convicted of first-degree murder and related crimes. The case arose from an October 22, 1976 shooting incident which resulted in the death of John Hollis and the wounding of John Pickens. The Pennsylvania Superior Court affirmed, and

on March 5, 1990, the Pennsylvania Supreme Court denied *allocatur*.

On September 20, 1996, Tillery petitioned for collateral relief under the Pennsylvania Post–Conviction Relief Act, alleging that he was denied effective assistance of counsel under the Sixth Amendment because his trial counsel, Joseph Santaguida, operated under an actual conflict of interest. Santaguida had represented Tillery at trial, but was replaced by James Bruno, Esquire, who filed post-verdict motions on Tillery's behalf and represented him on direct appeal. The PCRA court dismissed Tillery's application, finding his conflict claim procedurally defaulted, and the Superior Court affirmed. The Pennsylvania Supreme Court denied *allocatur*.

Tillery filed the instant petition in the Eastern District of Pennsylvania, asserting that his trial counsel labored under an actual conflict of interest and was thus constitutionally ineffective. The District Court dismissed the petition and declined to issue a certificate of appealability. Tillery next sought relief in this Court, and we remanded, directing the District Court to permit him to present evidence in support of his conflict claim. The District Court thereafter held two hearings, but reaffirmed its previous order denying relief. This appeal ensued.

## II.

The District Court had jurisdiction over Tillery's habeas petition under 28 U.S.C. § 2254, and we have jurisdiction under 28 U.S.C. § 1291. The District Court's legal conclusions, including its resolution of legal questions arising from application of the procedural default doctrine, are subject to plenary review. *Hull v. Kyler*, 190 F.3d 88, 97 (3d Cir.1999).

## III.

The Pennsylvania Superior Court concluded that Tillery had waived his actual conflict claim, finding that he had not raised the claim on direct appeal. The court relied on 42 Pa. Cons.Stat. Ann. § 9544(b), which states that "an issue is waived if the petitioner could have raised it but failed to do so ... on appeal," as well as that " '[i]neffectiveness of trial counsel must be raised at the first opportunity at which the counsel whose effectiveness is being challenged no longer represents the defendant,' " (App. at 253 (quoting *Commonwealth v. Miller*, 388 Pa.Super. 7, 564 A.2d 975, 977 (1989))). The state court's finding of waiver requires us to examine and employ the federal rules of procedural default.

### A. *Procedural Default*

Under the doctrine of procedural default, a federal habeas court is prohibited from considering constitutional claims where a state court has refused to entertain their merits on the basis of an adequate and independent state procedural rule, *see Harris v. Reed*, 489 U.S. 255, 262, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989), unless the habeas petitioner can show "cause" for the default and "prejudice" attributable thereto, *Wainwright v. Sykes*, 433 U.S. 72, 87, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). A state procedural rule is "adequate" if it is regularly or consistently applied by the state court, *see Johnson v. Mississippi*, 486 U.S. 578, 587, 108 S.Ct. 1981, 100 L.Ed.2d 575 (1988), and is "independent" if it does not "depend[ ] on a federal constitutional ruling," *Ake v. Oklahoma*, 470 U.S. 68, 75, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985).

To avoid waiver of any ineffective assistance of counsel claims, Pennsylvania law required Tillery to raise such claims "at the earliest stage in the proceedings at

which the counsel whose effectiveness is being challenged no longer represents the defendant." *Commonwealth v. Hubbard,* 472 Pa. 259, 372 A.2d 687, 695 n. 6 (1977).[1] Because Tillery obtained new counsel following trial, before the filing of post-verdict motions, the Superior Court recognized that he was obligated to raise all of his ineffective assistance of counsel claims pertaining to his trial counsel, including that Santaguida labored under an actual conflict, in post-verdict motions and on direct appeal.

Tillery challenges the adequacy of the *Hubbard* rule as applied to his case, arguing that "the state court never made an 'adequate' finding of procedural default because Tillery did not discover the claim until 1996, when he raised it on post-conviction relief." (Appellant's Br. at 11.) Tillery, however, is conflating concepts of the adequacy and independence of a state procedural rule with the correctness of the state court's application of its own law. Tillery has not furnished any argument or evidence germane to the adequacy inquiry. *See Reynolds v. Ellingsworth,* 843 F.2d 712, 719 (3d Cir.1988). We have previously determined that the *Hubbard* rule was an adequate and independent state procedural rule, *see Richardson v. Warden, S.C.I. Huntingdon,* 2005 WL 289992 (3d Cir.2005), and there is no evidence to suggest that it was not an independent and adequate state procedural rule as applied to Tillery. Instead, Tillery is charging Pennsylvania with the erroneous application of its own procedural rule, which

courts have repeatedly counseled is not a cognizable claim on habeas. *See Lewis v. Jeffers,* 497 U.S. 764, 780, 110 S.Ct. 3092, 111 L.Ed.2d 606 (1990) ("[F]ederal habeas corpus relief does not lie for errors of state law."); *Barnes v. Thompson,* 58 F.3d 971, 974 n. 2 (4th Cir.1995). Accordingly, the Pennsylvania Superior Court's decision to find Tillery's Sixth Amendment ineffective assistance claim waived rested upon application of an independent and adequate state procedural rule. His conflict of interest claim is procedurally defaulted. We can consider only whether cause and prejudice exists to excuse the procedural default.

### B. *Cause and Prejudice*

A federal habeas court may entertain a procedurally defaulted claim if the petitioner can show "cause for the default and actual prejudice as a result of the alleged violation of federal law." *Coleman v. Thompson,* 501 U.S. 722, 750, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). Although we agree that cause exists to excuse the procedural default, Tillery has not met his burden in demonstrating actual prejudice.

Tillery contends that the facts underlying the alleged actual conflict of interest were not known to him or his appellate counsel at the time of his direct appeal, thus giving rise to "cause" excusing his default. *See Murray v. Carrier,* 477 U.S. 478, 488, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986). Our analysis begins with a brief

---

1. The Pennsylvania Supreme Court overruled *Hubbard* in 2002, holding that "as a general rule, a petitioner should wait to raise claims of ineffective assistance of trial counsel until collateral review." *Commonwealth v. Grant,* 572 Pa. 48, 813 A.2d 726, 738 (2002). Consequently, "any ineffectiveness claim will be waived only after a petitioner has had the opportunity to raise that claim on collateral review and has failed to avail himself of that

opportunity." *Id.* Tillery, however, cannot receive the benefit of this ruling, as the court further held that the new rule would be applied retroactively to cases currently pending on direct review in which ineffective assistance claims had been raised and preserved, but not to cases pending on collateral review. *Id.* at 738–39 & n. 16. Tillery's direct and collateral state proceedings had concluded prior to the issuance of *Grant.*

summary of the facts underpinning Tillery's claim.

Tillery's conflict of interest claim is grounded in allegations that Santaguida also served as counsel to Pickens, one of the victims of the 1976 shootings, during the trial of Tillery's co-defendant, William Franklin. The Commonwealth tried Franklin for the 1976 shootings in 1980, five years prior to trying Tillery. Because Pickens had, according to a police officer's notes, identified the shooters as individuals other than Franklin and Tillery, Franklin attempted to call Pickens as an exculpatory witness. Santaguida informed Franklin's attorney that he advised Pickens to invoke his Fifth Amendment right against self-incrimination and refrain from testifying. The record reflects that, by the time Franklin actually stood trial in 1980, Pickens had fled the jurisdiction and was unable to be located, despite extensive efforts by Franklin's counsel.

Tillery, represented by Santaguida at his trial in 1985, did not discover that counsel had represented Pickens in Franklin's trial until 1996, when he came across the decision of *Commonwealth v. Franklin*, 397 Pa.Super. 265, 580 A.2d 25 (1990). This decision, which affirmed the denial of Franklin's petition for collateral relief, revealed that "Mr. Santaguida informed trial counsel that because of Mr. Pickens' involvement in the events underlying the criminal charges filed against [Franklin], he would have to advise his client not to testify for [Franklin]." *Id.* at 29.

At the evidentiary hearing conducted by the District Court, Tillery testified that Santaguida never disclosed that he formerly represented Pickens at co-defendant Franklin's trial. Santaguida could not remember whether he informed Tillery that he had previously represented Pickens. Thus, the earliest Tillery could have learned of that representation was in 1990,

when the Superior Court issued *Commonwealth v. Franklin*. This occurred well after the conclusion of Tillery's direct appeal. That Tillery's claim may not, in fact, be sustainable is not relevant to the reality that its factual basis was not reasonably available at the time of his direct appeal. Tillery has thus met his burden of showing cause.

To demonstrate "actual prejudice," Tillery must show "not merely that the errors at his trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982). Tillery cannot sustain this burden.

The Sixth Amendment guarantees criminal defendants the right to representation free of conflicts of interest. *See Strickland v. Washington*, 466 U.S. 668, 688, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *United States v. Gambino*, 864 F.2d 1064, 1069 (3d Cir.1988). A petitioner must demonstrate that "an actual conflict of interest adversely affected his lawyer's performance." *Cuyler v. Sullivan*, 446 U.S. 335, 348, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980). If this showing is made, prejudice will be presumed. *Id.* at 349–50, 100 S.Ct. 1708. The question of whether counsel operated under an actual conflict of interest that adversely affected performance is a mixed question of law and fact subject to *de novo* review. *Id.* at 341–42, 100 S.Ct. 1708.

Actual conflict is more likely to occur in cases involving joint representation in a single proceeding rather than in cases of multiple representation in which the attorney represents different clients in different matters. *Duncan v. Morton*, 256 F.3d 189, 197 (3d Cir.2001) (citations omitted). Moreover, the existence of an actual conflict and any adverse effects from it are

more likely to be apparent in cases in which counsel takes positive steps on behalf of one client to the detriment of the other, as opposed to cases involving the inaction and passivity of counsel. *Id.* This case presents at *most* one involving multiple representation, and Tillery cites only a passive lapse of representation by Santaguida. As such, to prove a Sixth Amendment violation premised on actual conflict, Tillery must show: (1) a plausible, alternative defense strategy or tactic might have been pursued that is of sufficient substance to be viable; and (2) the alternative defense was inherently in conflict with or not undertaken because of the attorney's other loyalty or interest. *See Gambino,* 864 F.2d at 1070.

Tillery argues that Santaguida's representation of Pickens in 1980 conflicted with Tillery's interest during his 1985 trial, and that this conflict manifested itself in constitutionally defective representation. Specifically, Tillery accuses Santaguida of failing to put forth his best effort to locate Pickens at the time of Tillery's trial. Santaguida further declined to request a missing witness charge, which Tillery also attributes to his alleged divided loyalties.

The record undermines Tillery's claim of a debilitating conflict of interest. First, Tillery has not succeeded in showing that the defense strategy of subpoenaing Pickens as an exculpatory witness in his trial was a viable one. At the time Franklin's trial commenced in late 1980, Pickens could not be located. As Tillery admits, Santaguida explained in 1985 that he was unaware of Pickens' whereabouts, and that neither he nor the Commonwealth could locate Pickens. Although he could not recall exactly what steps he took in his attempts to contact Pickens, Santaguida testified that he did conduct a search. He theorized that Pickens was making himself scarce to avoid testifying. Significantly,

even at the time that he provided advice to Pickens in 1980, and at all times thereafter, Santaguida had no knowledge of his location. Tillery, contrarily, attested that his counsel did not make every effort to locate Pickens. He did not, however, provide any specific examples or support for this bald assertion.

Second, Tillery has not succeeded in showing that Santaguida owed a continuing duty of loyalty to Pickens, that in turn prevented counsel from using his best efforts to locate him. Santaguida's representation of Pickens occurred five years prior to Tillery's trial, and likewise terminated before Tillery's trial. At best, the record discloses that the representation of Pickens was fleeting and minimal. When asked at the evidentiary hearing if he ever represented Pickens, Santaguida responded that he did not believe that he represented him in a courtroom. Rather, based on his refreshed recollection, either Pickens or someone acting on his behalf called him to obtain advice on testifying in the *Franklin* case. Furthermore, he could not recall providing any additional legal services to Pickens, and testified that no communication took place between them other than that one instance. In his view, there was no conflict "because Mr. Pickens, number one, couldn't be found." (App. at 181.) Contrary to Tillery's claim, Santaguida never stated that, had he found Pickens, he would have advised him not to testify in Tillery's trial. There is not a shred of evidence that Santaguida's representation of Pickens continued past its brief lifespan in 1980. In short, counsel did not *actively* represent competing interests.

Tillery has failed to convince us that an actual conflict of interest existed that adversely impacted Santaguida's performance. His claim that the record discloses that Santaguida possessed a duty of loyal-

ty to Pickens at the time he represented Tillery, and that this duty of loyalty conflicted with his duty of loyalty to Pickens, is purely speculative. Rather, the record plainly reveals a *successive* representation of two clients with possible diverging interests. Not only was this scenario not addressed by the Pennsylvania Lawyer's Code of Professional Responsibility in effect at the time, *compare* Pa. Lawyer's Rules of Professional Conduct R. 1.9 cmt. (1988), but the Supreme Court has made clear that the mere possibility of conflict is insufficient to demonstrate the existence of an actual conflict, *Cuyler*, 446 U.S. at 350, 100 S.Ct. 1708. There is no evidence that Santaguida's actions and inactions were influenced by loyalty to Pickens, or that he even maintained a loyalty to Pickens in 1985. Reliance upon the relationships created between himself, Pickens, and Santaguida cannot, standing alone, suffice to demonstrate the existence of an actual conflict of interest and adverse impact.

We conclude that Tillery's trial counsel's performance was not adversely affected by Santaguida's brief representation of Pickens. Tillery has not established that he was prejudiced, and his claim is thus procedurally defaulted.

## IV.

For the foregoing reasons, the judgment of the District Court entered on July 30, 2003, will be affirmed.