630 A.2d 1238

COMMONWEALTH of Pennsylvania

v.

Christopher Francis DONAHUE, Appellant.

Superior Court of Pennsylvania.

Submitted Feb. 22, 1993.

Filed Aug. 27, 1993.

Christopher Donahue, pro se.

Carolyn L. Darringer, Asst. Dist. Atty., Reading, for Com.

David M. McGlaughlin, Philadelphia, amicus curiae.

Before ROWLEY, President Judge, and DEL SOLE and CERCONE, JJ.

CERCONE, Judge:

This is a *pro se* appeal from the judgment of sentence entered in the Court of Common Pleas of Berks County, dated November 13, 1991. We vacate the judgment of sentence and remand for a new trial.

Appellant was charged with two counts each of possession of a controlled substance,[1] possession of a controlled substance with intent to deliver,[2] and corrupt organizations.[3] He was also charged with one count of criminal conspiracy[4] in connection with the sale of illicit drugs. The charges arose from a criminal relationship the appellant had with Erwin Bieber of Berks County. On various occasions, Bieber sold large quan-

1. 35 P.S. § 780–113(a)(16).

2. *Id.* § 780–113(a)(30).

3. 18 Pa.C.S.A. § 911.

4. *Id.* § 903.

tities of marijuana to appellant at appellant's residence in Bucks County.

On June 19, 1990, the Pennsylvania State Police learned from Albuquerque, New Mexico police detectives that suspects in a drug ring in that city had made numerous telephone calls to two phone numbers in Berks County. Those telephone numbers belonged to Bieber. As part of the Pennsylvania investigation, the Berks County District Attorney applied with this Court for authorization to intercept communications from Bieber's telephones. Our Court granted three separate authorizations to intercept calls. As a result of the telephone interception, the police learned that Bieber was selling marijuana to the appellant herein. The police monitored Bieber and observed him travelling to Bucks County on November 7, 1990, to deliver sixteen pounds of marijuana to appellant. Appellant later wrote a check to Bieber for remuneration. A second incident occurred on November 17, 1990, when Bieber received marijuana from two cohorts he met at the Philadelphia International Airport. Bieber was later arrested, along with his cohorts, and the police seized approximately sixty pounds of marijuana.[5] Thereafter, police executed a search warrant for appellant's residence. Upon execution of the warrant, they found appellant in possession of twenty-five (25) grams of marijuana. He was subsequently arrested and charged with the aforementioned crimes.

Before trial, appellant filed an omnibus pretrial motion seeking, *inter alia,* (1) suppression of the intercepted communications pursuant to the Pennsylvania Wiretapping and Electronic Surveillance Control Act, (2) dismissal of the possession charges on grounds that the criminal complaint charged appellant of these crimes in Bucks County, outside of the jurisdiction of the Berks County Court of Common Pleas. In a plethora of orders, the trial judge denied appellant's motion to suppress the evidence and permitted the Commonwealth to

5. Appellant was charged with two counts each of possession of a controlled substance and possession of a controlled substance with intent to deliver, in connection with these two separate incidents.

amend the complaint to allege that the criminal acts of possession were committed in either Berks or Bucks County.

Trial began on October 16, 1991. After four days of testimony, a jury convicted appellant of the two counts of possession with intent to deliver, two counts of criminal conspiracy and two counts of corrupt organizations. Trial counsel filed post-verdict motions which alleged a variety of issues. Trial counsel specifically briefed twelve of these issues. The trial judge denied this motion. Appellant was then sentenced to a term of incarceration of three (3) to seven (7) years for possession with intent to deliver. He was also sentenced to concurrent terms of one (1) to seven (7) years incarceration on all other counts. This timely appeal followed.

■ After notice of appeal was filed, the trial judge ordered appellant to file a statement of matters complained of pursuant to Pa.R.A.P. Rule 1925(b), 42 Pa.C.S.A. Counsel for appellant filed a statement listing seventy-one issues raised on appeal. The trial judge declined to file an opinion which addressed the issues on the merits, finding instead that all the issues were waived under Rule 1925. Subsequently, counsel for appellant filed a motion to withdraw, which we granted. Accordingly, appellant is representing himself *pro se* and has raised the following issues for our review:

1. Did the Berks County Court of Common Pleas have jurisdiction of the substantive crimes in this case when the marijuana was possessed in Bucks County;

2. did the trial court err in not giving a corrupt and polluted source jury instruction where the witness was a co-defendant, his testimony was the only testimony linking [appellant] to sixteen (16) pounds of marijuana and the witness testified he expected very favorable treatment from the prosecutor;

3. should the contents of the intercepted wire communications and the evidence derived therefrom have been suppressed where

 (1) the Final Report was not timely served upon [appellant]; Service of Inventory was never made upon

[appellant], and Judge Cavanaugh did not cause to be served on [appellant] Service of Inventory;

(2) the Application for Authorization to intercept wire communications was not signed nor sworn to by the District Attorney of Berks County;

(3) [the] Commonwealth did not meet the normal investigative procedures requirement of 18 Pa.C.S.A. § 5710(a)(3);

4. was there sufficient evidence to convict [appellant] of Corrupt Organizations and conspiracy to commit Corrupt [O]rganizations;

5. was [appellant] denied due process of law, effective assistance of counsel, his right of confrontation and equal protection under the law by the actions of the Superior Court of Pennsylvania and Judge ·Calvin Smith;

6. was [appellant's] counsel effective?

We shall consider each of these issues.[6] As a preliminary matter, however, we must address the trial judge's contention that all the issues raised on appeal were waived, pursuant to Rule of Appellate Procedure 1925. That rule states in pertinent part:

**(b) Direction to File Statement of Matters Complained of.** The lower court forthwith may enter an order directing the appellant to file of record in the lower court and serve on the trial judge a concise statement of the matters complained of on the appeal no later than 14 days after entry of such order. A failure to comply with such direction may be considered by the appellate court as a waiver of all objections to the order, ruling or other matter complained of.

*Id.* The Honorable Calvin Smith of the Court of Common Pleas of Berks County ordered appellant to file a concise statement of matters complained of on appeal. Counsel for appellant filed a statement listing thirty-two issues, some

---

**6.** We shall consider appellant's claims concerning jurisdiction and sufficiency of the evidence first as those claims afford him the most relief.

containing a variety of subparts. Based on the "inordinate" number of issues raised, Judge Smith held that the statement was not *concise* and deemed all the issues waived pursuant to Rule 1925. We do not agree with Judge Smith's analysis.

We first note that the issue of waiver based on a violation of Rule 1925(b) is expressly reserved to the appellate courts, and not to the trial courts. *Id.* Furthermore, with reference to the case at hand, most of the issues in the Rule 1925 statement would have been waived for failure to raise and argue these issues in post-verdict motions. It is well-established that boiler-plate allegations in post-verdict motions do not preserve issues for appellate review. *Commonwealth v. Pronkoskie,* 498 Pa. 245, 445 A.2d 1203 (1982); *Commonwealth v. Philpot,* 491 Pa. 598, 421 A.2d 1046 (1980). Even if an issue is contained in a written post-trial motion, unless it is briefed or argued during post-trial proceedings, the issue is waived for purposes of appellate review. *Commonwealth v. Holzer,* 480 Pa. 93, 389 A.2d 101 (1978). *See also Commonwealth v. Manigault,* 501 Pa. 506, 462 A.2d 239 (1983) (where issues stated in post-trial motions are not briefed or argued in the lower court, issues are waived on appeal). Appellant did, however, raise and brief twelve issues in post-verdict motions, including those raised on appeal. We find that the issues raised on appeal have been preserved and we will address the merits of the issues raised despite the lack of a substantive trial court opinion.[7]

In his first issue, appellant contends that the trial court did not have jurisdiction over the possession crimes with which he was charged, as the Commonwealth never adduced evidence that appellant possessed the marijuana in Berks County. Initially, appellant sought to quash the complaint on the grounds that he conducted no criminal activity in Berks County; but rather in Bucks County, as borne out by the complaint. The trial judge denied the motion to quash and

7. We note the limited precedential value of our discussion in this regard. In all cases in which the determination of guilt occurs on or after January 1, 1994, post-trial motions will no longer be a prerequisite to appellate review of alleged trial court errors. *See* 23 Pa.Bull. 1685 (1993).

allowed the Commonwealth to amend the complaint to aver that the substantive crimes occurred in Bucks County and/or Berks County.

Our Supreme Court has established that "the locus of a crime is always in issue, for the court has no jurisdiction of the offense unless it occurred within the county of trial, or unless by some statute, it need not. . . ." *Commonwealth v. Boyle,* 516 Pa. 105, 112, 532 A.2d 306, 309 (1987). "For a county to take jurisdiction over a criminal case, some overt act involved in that crime must have occurred within that county." *Id.* "In order to base jurisdiction on an overt act, the act must have been essential to the crime . . ." *Id.*

Appellant maintains that the evidence cannot show that he either actually or constructively possessed the marijuana in Berks County. The Commonwealth, in contrast, avers that the facts demonstrate that appellant could be and was convicted on the basis of accomplice liability as an accessory to Bieber's possession of marijuana in Berks County. We agree with the Commonwealth for the reasons that follow.

■ Accomplice liability is discussed in pertinent part in the Pennsylvania Crimes Code as follows:

§ 306. **Liability for conduct of another; complicity**

(a) **General rule.**—A person is guilty of an offense if it is committed by his own conduct or by the conduct of another person for which he is legally accountable, or both.

(b) **Conduct of another.**—A person is legally accountable for the conduct of another person when:

\* \* \* \* \* \*

(3) he is an accomplice of such other person in the commission of the offense.

(c) **Accomplice defined.**—A person is an accomplice of another person in the commission of an offense if:

(1) with the intent of promoting or facilitating the commission of the offense, he:

(i) solicits such other person to commit it; . . . .

18 Pa.C.S.A. § 306. The Crimes Code further defines the crime of solicitation as follows:

> **(a) Definition of solicitation.**—A person is guilty of solicitation to commit a crime if with the intent of promoting or facilitating its commission, he commands, encourages or requests another person to engage in specific conduct which would constitute such crime or an attempt to commit such crime or which would establish his complicity in its commission or attempted commission.

*Id.* § 902. Thus, one who encourages or requests another to commit a crime is guilty of solicitation. He is further guilty of accomplice liability for the crime if he intends to promote the commission of the offense.

[6] The facts of the case indicate that Erwin Bieber and appellant were "business associates" in the distribution of marijuana. Bieber resided in Berks County while appellant lived in Bucks County. Prior to obtaining a shipment of marijuana, Bieber had a telephone conversation with appellant whereby appellant informed Bieber that should Bieber receive a shipment of marijuana, he (appellant) would be interested in acquiring it. Bieber received a shipment of marijuana at his home in Berks County and then transported it to appellant's home in Bucks County. Bieber also testified that he had conducted business with appellant five to ten times in the past.

It can be reasonably inferred that because of appellant's prior relationship with Bieber in the purchase of marijuana, his statement to Bieber regarding the marijuana implies that appellant both encouraged and requested Bieber to obtain marijuana to sell to him. Thus, the evidence establishes that appellant solicited Bieber to purchase and possess the marijuana with intent to deliver. Taken one step further, it is also reasonably clear that appellant intended to promote Bieber to commit the offense so that he, in turn could obtain marijuana to sell. Thus, because Bieber's criminal acts oc-

curred in Berks County, appellant could be tried in Berks County as an accomplice of Bieber.[8]

In his fourth issue, appellant argues that the evidence was insufficient to prove his convictions for corrupt organizations and conspiracy to commit corrupt organizations. 18 Pa.C.S.A. § 911(b)(3), (4). It is well settled that when sufficiency of the evidence claims are raised, "an appellate court must review the evidence presented and all reasonable inferences drawn therefrom in a light most favorable to the verdict winner and determine whether on the record there is a sufficient basis to support the challenged conviction." *Commonwealth v. Madison*, 501 Pa. 485, 490, 462 A.2d 228, 231 (1983) (citations omitted). The proper application of this test requires us to evaluate the entire trial record and all evidence actually received in the aggregate and not as fragments isolated from the totality of the evidence. *Commonwealth v. Harper*, 485 Pa. 572, 576, 403 A.2d 536, 538 (1979). *See also Commonwealth v. Griscavage*, 512 Pa. 540, 517 A.2d 1256 (1986) (explicating appropriate application of standard of review set forth in *Harper, supra* ). This standard means that we must view the evidence in the light most favorable to the Commonwealth as the verdict winner, and drawing all proper inferences favorable to the Commonwealth, determine if the jury could reasonably have concluded that all of the elements of the crime were established beyond a reasonable doubt. *Commonwealth v. Edwards*, 521 Pa. 134, 143, 555 A.2d 818, 823 (1989). We note that the trier of fact is free to believe all, part, or none of the evidence presented, *Griscavage*, 512 Pa. at 546, 517 A.2d at 1259, and that "the Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence." *Harper*, 485 Pa. at 576, 403 A.2d at 538.

The pertinent provisions of the Corrupt Organizations statute are set forth as follows:

**8.** Upon remand, the trial judge should instruct the jury that appellant may only be found guilty for those actions which occurred in Berks County if it finds that he was an accomplice to Bieber.

(3) It shall be unlawful for any person employed by or associated with any *enterprise* to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity.

(4) It shall be unlawful for any person to conspire to violate any of the provisions of paragraphs (1), (2) or (3) of this subsection.

18 Pa.C.S.A. § 911(b)(3), (4) (emphasis added). Appellant relies on the precedents set forth by federal courts in interpreting the Federal Racketeer Influenced and Corrupt Organizations Act (RICO) to argue that the Commonwealth was unable to prove that an "enterprise" existed. Section 911 of the Crimes Code defines "enterprise" as:

(3) **"Enterprise"** means any individual, partnership, corporation, association or other legal entity, and any union or group of individuals associated in fact although not a legal entity, engaged in commerce.

*Id.*[9] This Court has interpreted this term to encompass both legitimate and illegitimate enterprises. *Commonwealth v. Yacoubian,* 339 Pa.Super. 413, 420, 489 A.2d 228, 231 (1985).

 Appellant refers us to the United States Supreme Court decision of *United States v. Turkette,* 452 U.S. 576, 101 S.Ct. 2524, 69 L.E.2d 246 (1981), which discussed and further refined the necessary proof of an enterprise under RICO.[10] In *Turkette,* the Supreme Court held that in order to prove the existence of an enterprise, the government must proffer evidence of an ongoing organization, formal or informal, and evidence that the various associates function as a continuing unit. *Id.* at 583, 101 S.Ct. at 2528, 69 L.E.2d at 254. *Accord United States v. Riccobene,* 709 F.2d 214 (3rd Cir.1983), *cert. denied,* 464 U.S. 849, 104 S.Ct. 157, 78 L.E.2d 145 (1983). In *Riccobene,* the Court of Appeals for the Third Circuit discussed the Supreme Court's decision in *Turkette* and found:

9. The definition of "enterprise" under the Federal RICO statute is similar to the Pennsylvania definition, but does not require that the enterprise be engaged in commerce. 18 U.S.C. § 1961(4).

10. The Pennsylvania Corrupt Organizations statute mirrors the Federal RICO statute in all matters pertinent to this issue.

In reaching its conclusion, the Supreme Court was not unmindful of the dangers of its interpretation. Both judges and commentators had raised the concern that the concept of "illegal enterprise" could be construed quite broadly. Legal scholars had concluded that without further refinement of the term, the statute could be extended to situations far removed from those actually contemplated by Congress, and that federal prosecutors could use the law to invoke an additional penalty whenever they had a case involving the commission of two offenses that, coincidentally were among those listed as "racketeering activities."

*Id.* at 400, 489 A.2d at 221. When interpreting our corrupt organizations statute, we are not bound by the mandates of the United States Supreme Court decisions regarding concomitant federal statutes. However, because the Pennsylvania corrupt organizations statute substantively covers the same type of criminal activity as that proscribed in the federal RICO Act, we find the federal court interpretations persuasive. To that end, we hold that in order to sustain a conviction for corrupt organizations, the Commonwealth must prove that there was an ongoing organization engaged in commerce and that the associates of the organization functioned as a continuing unit. By so holding, we ensure that a criminal defendant is being convicted based on evidence of his involvement in the ongoing enterprise, as the corrupt organization statute intended, and not merely based on evidence which proves the underlying crimes committed in furtherance of the alleged enterprise.

■ In the context of the present matter we find that the Commonwealth met its burden of establishing that appellant was associated with an ongoing enterprise engaged in commerce. Although appellant maintains that the evidence merely establishes his involvement in purchasing marijuana from Bieber without any further indication that he was aware of the existence of the other parts of the enterprise, his view of the facts is belied by the certified record and does not represent the facts when taken in a light most favorable to the Commonwealth as the verdict winner.

Erwin Bieber testified at appellant's trial that he had a business relationship with appellant which continued for seven to eight years. He further testified that he would receive telephone calls from various marijuana suppliers asking if he was interested in purchasing large quantities of the illicit drug. Bieber specifically referred to one incident which occurred on November 7, 1990. Bieber received a telephone call from Paul Allen on November 6, 1990 who asked Bieber if he was interested in receiving a shipment of marijuana. Allen flew into Philadelphia International Airport and drove to Bieber's home to deliver the shipment. Later, Bieber transported the shipment to appellant's residence. There, appellant and Bieber agreed on a price for the marijuana. Bieber left the shipment with appellant and went home. Appellant paid Bieber the following day by leaving a check for Bieber in a large bag of dog food, a common procedure for payment.

Bieber also recounted a second incident where he met one Jeff Morgan and one Greg Jacquez at the Philadelphia Airport when the two arrived from California. Morgan and Jacquez supplied Bieber with a large quantity of marijuana which Bieber then resold to various people including appellant. He indicated that appellant was willing to purchase whatever quantity he was able to offer. Although Bieber intended to deliver the marijuana to appellant on this occasion, the Pennsylvania State Police apprehended him before the transaction was consummated.

Bieber further testified that appellant did not personally know any of his [Bieber's] suppliers. Appellant argues that since he did not know any of the suppliers, his own role as a buyer of Bieber's was just that and could not justify an inference that he was associated with an ongoing criminal enterprise. His contention ignores the evidence of appellant's conversations with Bieber which indicate his general knowledge of the source of the illicit drugs from suppliers in New Mexico and California. Although the conversations were in cryptic language, Bieber testified that this "code" was used to disguise the real purpose of the telephone conversations. Further, the conversations indicate that appellant himself had

given Bieber leads in finding sources of marijuana. *See* N.T. 10/21/91 at 18–34.

Thus, the evidence indicates that appellant maintained an association with Bieber and his drug suppliers in a drug ring which lasted for six to seven years. The group was engaged in the commercial activity of distributing marijuana with individual profits being made from each transfer of the drugs. Contrary to appellant's assertions, he knew the basic structure of the enterprise and was aware of his role in the distribution scheme. It was not necessary that he specifically know each person associated with the enterprise. Thus, we find that the evidence sufficiently established the existence of an enterprise necessary to support appellant's convictions for corrupt organizations and conspiracy to commit that crime.

In his third issue, appellant contends that the trial court erred in refusing to give a "corrupt source" instruction concerning Erwin Bieber's testimony. In the present matter, after the trial judge concluded instructing the jury, he asked counsel if they wished to request corrections or additions to the instructions. Counsel for appellant answered affirmatively and at sidebar requested that the trial judge instruct the jury as to the credibility of an accomplice, otherwise known as a "corrupt source" instruction. Counsel did not have a written charge submitted and the trial judge ostensibly denied the request on that basis. This was error.

In *Commonwealth v. Gonzales,* 334 Pa.Super. 603, 483 A.2d 902 (1984), after instructing the jury, the trial judge asked if there were any other points. We held that the oral request in response to the judge's inquiry was appropriate under Rule of Criminal Procedure 1119. That rule does not require a written request for instructions; but merely indicates a preference for the written request. Therefore, the request was not untimely and the trial judge erred in refusing for failure to have a written point for charge prepared. *Id.* at 608–09, 483 A.2d at 904–05; Pa.R.Crim.P. Rule 1119, 42 Pa.C.S.A.

We must now determine whether the charge was necessary under the facts of this case. Our standard of

review of a decision denying a requested point for charge is well settled. Jury instructions must be viewed in their totality to assess whether the charge accurately and adequately explains the relevant law to the jury and guides the jury in its deliberations. *Commonwealth v. Ort*, 398 Pa.Super. 475, 482, 581 A.2d 230, 234 (1990), *allocatur denied*, 527 Pa. 623, 592 A.2d 44 (1991). The trial judge is not required to grant a requested point for charge, so long as the charge given sufficiently states the pertinent law. *Commonwealth v. Sanders*, 380 Pa.Super. 78, 95, 551 A.2d 239, 248 (1988), *allocatur denied*, 522 Pa. 575, 559 A.2d 36 (1989).

 In *Commonwealth v. Franklin*, 397 Pa.Super. 265, 580 A.2d 25 (1990), *allocatur denied*, 527 Pa. 641, 593 A.2d 415 (1991), we had occasion to discuss the propriety of an accomplice charge. We held:

> An accomplice charge with respect to a witness is warranted when evidence at trial either requires or permits the inference that the witness may have been a participant in the crime charged. It is *reversible error* for a trial court not to give an accomplice charge if the evidence permits an inference that a witness was an accomplice. However, where the evidence does not permit the jury to infer that a Commonwealth witness was an accomplice, the trial court is empowered to conclude, as a matter of law, that the witness was not an accomplice. In such a case, an accomplice charge is not required.

*Id.* at 282, 580 A.2d at 34 (citations omitted) (emphasis added). In the present matter, it is relatively clear that Erwin Bieber and appellant were both part and parcel of the illicit enterprise of selling drugs. Bieber was appellant's supplier of drugs and appellant was Bieber's primary customer. Therefore, the evidence establishes that Bieber was a participant in the crimes charged against appellant. Accordingly, the trial judge committed reversible error when he refused to charge the jury as to the accomplice testimony and appellant is entitled to a new trial.

■ Next, we address appellant's claims surrounding the wiretap which resulted in incriminating evidence. Appellant contends that the evidence obtained from the interception of his telephone communications should have been suppressed for various reasons. In reviewing an order denying a motion to suppress evidence, we must determine whether the factual findings of the lower court are supported by the evidence of record. *Commonwealth v. Espada,* 364 Pa.Super. 604, 607, 528 A.2d 968, 969 (1987). In making this determination, we may only consider the evidence of the Commonwealth witnesses and so much of the witnesses for the defendant, as fairly read in the context of the record as a whole, which remains uncontradicted. *Id.* If the evidence supports the findings of the lower court, we are bound by such findings and may reverse only if the legal conclusions drawn therefrom are in error. *Id.*

■ Appellant contends that intercepted wire communications should have been suppressed for the following reasons: (1) the Final Report was not timely served upon appellant in accordance with 18 Pa.C.S.A. § 5720; (2) the application for authorization was not signed nor sworn to by the District Attorney of Berks County, in accordance with 18 Pa.C.S.A. § 5709; (3) the Commonwealth did not meet the normal investigative procedures requirement of 18 Pa.C.S.A. § 5710(a)(3); and, (4) the original applications and orders were not produced at the hearing, in violation of the Best Evidence Rule. These issues call into question the proper application of various provisions of the Pennsylvania Wiretapping and Electronic Surveillance Control Act. 18 Pa.C.S.A. §§ 5701–5748. Section 5721 of the Crimes Code provides the exclusive grounds for suppression of evidence under the Wiretap Act, as follows:

(a) **Motion to suppress.**—Any aggrieved person in any trial, hearing, or other adversary proceeding in or before any court or other authority of this Commonwealth may move to suppress the contents of any intercepted wire, electronic or oral communication, or evidence derived therefrom, on any of the following grounds:

(1) The communication was unlawfully intercepted.

(2) The order of authorization if required is insufficient on its face.

(3) The interception unless made in accordance with section 5704 (relating to exceptions to prohibition of interception and disclosure of communications) was not made in conformity with the order of authorization or in accordance with the requirements of section 5712 (relating to issuance of order and effect).

18 Pa.C.S.A. § 5721(a). Section 5721 further provides:

**(d) Exclusiveness of remedies and sanctions.**—The remedies and sanctions described in this subchapter with respect to the interception of wire, electronic or oral communications are the *only* judicial remedies and sanctions for nonconstitutional violations of this subchapter involving such communications.

*Id.* § 5721(d) (emphasis added). Thus, grounds for suppression based on nonconstitutional violations of the Wiretap Act are limited to incriminating evidence resulting from a wiretap based on an interception which was unlawful or otherwise conducted in contravention of the judicial order, or because the judicial order was insufficient on its face.[11] In the case *sub judice*, appellant characterizes certain violations of the Wiretap Act as constitutional violations. However, we note

---

**11.** We are aware of our Supreme Court's discussion in *Commonwealth v. Hashem*, 526 Pa. 199, 584 A.2d 1378 (1991) which held:

> If the surveillance permitted by the Act is to meet the test of reasonableness, it is essential that at a minimum, *all* the requirements directed by the Legislature be met. *No violations of any provisions of the Act will be countenanced, nor will the failure of the prosecutors to diligently follow the strict requirements of the Act be lightly overlooked.*

*Id.* at 206, 584 A.2d at 1382 (1991) (emphasis in original). Although the Supreme Court held that no violations of the Wiretap Act can be countenanced, that case interpreted the Wiretap Act before it was amended in 1988. The prior version of section 5721 did not include subsection (d) which made the suppression grounds in subsection (a) the exclusive remedy for nonconstitutional violations of the Act. Accordingly, we are constrained to follow the statute as amended and cannot reverse the ruling of the suppression court except for the violations as enumerated in section 5721(a).

that no constitutional claims were preserved in post-verdict motions. We therefore deem any constitutional claims in this regard to be waived for our review. It is well-established that boiler-plate allegations in post-verdict motions do not preserve issues for appellate review. *See Commonwealth v. Pronkoskie, supra; Commonwealth v. Philpot, supra; Commonwealth v. Holzer, supra.*

■ We now turn to the substantive claims appellant has raised. He first contends that the evidence should be suppressed because the Commonwealth failed to follow the notice requirements of section 5720. That section prohibits the disclosure of any evidence derived from an interception at any hearing unless, at least ten days before the hearing, the parties to the action have been served with a copy of the judicial order, application for authorization to conduct a wire intercept, and the final report detailing the results of the intercept. 18 Pa.C.S.A. § 5720. However, failure to comply with the notice requirement is not a basis for suppression of the intercepts under section 5721. We can therefore afford appellant no relief on this claim.

■ Next, appellant avers that the evidence of the wiretaps should have been suppressed because the application for authorization to intercept communications was facially invalid because the District Attorney of Berks County failed to attach a sworn affidavit which complied with 18 Pa.C.S.A. § 5709. Again, we are constrained to find that suppression was not an appropriate remedy for any violation of the application procedures outlined in section 5709. Violation of that section is not one of the bases of suppression outlined in section 5721.

■ Appellant also argues that the sworn affidavits executed by investigating official pursuant to section 5709(3) did not state that normal investigative measures had been exhausted sufficient to warrant a wire interception. For the reasons already stated, this claim cannot serve to support a motion to suppress under section 5721. Nonetheless, we have reviewed the sworn affidavits of the investigating officers and have found that they did indeed detail, with specificity, that

normal investigative measures had been exhausted in this matter.

Finally, appellant maintains that the evidence of the interceptions should have been suppressed on grounds that the Commonwealth failed to produce the original applications and orders in violation of the Best Evidence Rule. However, evidentiary rulings are not a ground for suppression under section 5721(a). Accordingly, we can afford appellant no relief on this claim and conclude that the trial judge properly denied the motion to suppress.

In his fifth issue, appellant maintains that Judge Smith of the Court of Common Pleas of Berks County and this Court have denied appellant's due process rights, his right to effective assistance of counsel, his right of confrontation and right to equal protection. Although appellant couches this claim as one of constitutional magnitude his claims address whether he received a fair trial.

As to Judge Smith, appellant avers, along with Amicus curiae, that Judge Smith's conduct deprived him of a fair trial. In his brief, appellant lists sixteen various reasons to support his conclusion. We have reviewed the record in this case and find that although Judge Smith, at times, acted in a cantankerous manner towards this case, we find nothing in the record to support appellant's claim that he was denied a fair trial.

Appellant also argues that this Court denied him his rights under the Wiretap Act. Specifically, appellant requested to inspect sealed documents concerning the wiretap of his telephone conversations. This contention is supported by the record. Although 18 Pa.C.S.A. § 5715 mandates the sealing of the application, final report, monitor's record and other supporting papers, Section 5716(c) allows a moving party, who was a participant in intercepted communications, to inspect transcripts of the interceptions, as well as other listed documents. Upon such application, this Court is required to make them available to the movant. *Id.* § 5716(c). Thus, upon remand, the Prothonotary of this Court is directed to make the monitor's record, transcripts of the intercepted communi-

cations, and all applications and orders available to appellant for his inspection, pursuant to section 5716(c).

▮ In his last issue, appellant contends that trial counsel was ineffective for failing to seek suppression based on twenty-five separate grounds set forth in his brief. Our standard of review for allegations of ineffective assistance of counsel is well-established and quite narrow. Ineffectiveness claims are subject to a three-part analysis. First, it must be demonstrated that the underlying claim is of arguable merit. Next, it must be determined whether counsel's choice of action had some reasonable basis designed to effectuate his or her client's interests. Finally, a showing must be made of how counsel's choice of action prejudiced the client. *Commonwealth v. Tavares*, 382 Pa.Super. 317, 321, 555 A.2d 199, 201 (1989), *allocatur denied*, 524 Pa. 619, 571 A.2d 382 (1989). Prejudice in the context of a claim of ineffective assistance of counsel is determined by an evaluation of whether "but for the arguably ineffective act or omission there is a reasonable probability that the result would have been different." *Commonwealth v. Petras*, 368 Pa.Super. 372, 376, 534 A.2d 483, 485 (1987). The law presumes that counsel was effective, so that the burden of establishing ineffectiveness rests squarely upon the defendant. *Commonwealth v. Smith*, 380 Pa.Super. 619, 624, 552 A.2d 1053, 1056 (1989), *allocatur denied*, 525 Pa. 581, 575 A.2d 112 (1990). Counsel will not be deemed ineffective for failing to assert a baseless claim. *Commonwealth v. Cook*, 383 Pa.Super. 615, 623, 557 A.2d 421, 425 (1989). Moreover, in making assertions of ineffectiveness, a claimant must allege sufficient facts upon which a reviewing court can conclude that trial counsel may have been ineffective since the appellate courts will not consider such claims in a vacuum. *Commonwealth v. Durst*, 522 Pa. 2, 4, 559 A.2d 504, 505 (1989).

▮ Although appellant states many reasons upon which suppression should have been sought, he provides this Court with no meaningful discussion of whether his claim is of arguable merit, whether trial counsel had no reasonable basis for his actions, or whether he was prejudiced by counsel's

alleged dereliction. As we cannot decide ineffectiveness claims in a vacuum, *id.*, we can afford appellant no relief on his claim.

Judgment of sentence vacated; case remanded for proceedings consistent with this opinion; jurisdiction is relinquished.