J-S10040-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JESUS DEJESUS-GONZALEZ | : | |
| | : | |
| Appellant | : | No. 909 MDA 2021 |

Appeal from the Judgment of Sentence Entered June 11, 2021
In the Court of Common Pleas of Lancaster County
Criminal Division at No(s): CP-36-CR-0002608-2019

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JESUS DEJESUS-GONZALEZ | : | |
| | : | |
| Appellant | : | No. 910 MDA 2021 |

Appeal from the Judgment of Sentence Entered June 11, 2021
In the Court of Common Pleas of Lancaster County
Criminal Division at No(s): CP-36-CR-0005343-2020

BEFORE:  MURRAY, J., McLAUGHLIN, J., and COLINS, J.[*]

MEMORANDUM BY COLINS, J.:                    **FILED AUGUST 08, 2022**

Jesus Dejesus-Gonzalez appeals from the judgments of sentence imposed following a jury trial in which he was found guilty of two counts of aggravated indecent assault of a child, aggravated indecent assault of a person less than thirteen years of age, indecent assault without the

---

[*] Retired Senior Judge assigned to the Superior Court.

complainant's consent, indecent assault on an unconscious or unaware person, indecent assault of a person less than thirteen years of age, intimidation of witnesses or victims, unlawful contact with a minor, and corruption of minors as a person eighteen years or older.[1] For these offenses, Dejesus-Gonzalez received an aggregate sentence of ten to twenty years of incarceration to be followed by three years of probation. On appeal, Dejesus-Gonzalez presents two issues, which contend that the lower court erred by admitting inadmissible hearsay and, too, made a mistake by not granting his request for a mistrial. The latter claim stems from apparently incriminating testimony given by a detective who attempted to discuss with Dejesus-Gonzalez the allegations that would form the underpinnings of his convictions. After a thorough review of each argument, we find no merit to either assertion and affirm.

Briefly, the victim, who was twelve years old at the time, alleged that Dejesus-Gonzalez, her uncle, stuck his finger into her vagina while she was sleeping in the basement with Dejesus-Gonzalez, Dejesus-Gonzalez's girlfriend, and the girlfriend's two daughters. In conjunction with this allegation, the victim indicated that Dejesus-Gonzalez, among other things, offered to give her five dollars if she did not tell anyone about what had happened.

---

[1] **See** 18 Pa.C.S.A. § 3125(b), 18 Pa.C.S.A. § 3125(a)(7), 18 Pa.C.S.A. § 3126(a)(1), 18 Pa.C.S.A. § 3126(a)(4), 18 Pa.C.S.A. § 3126(a)(7), 18 Pa.C.S.A. § 4952(a)(1), 18 Pa.C.S.A. § 6318(a)(1), and 18 Pa.C.S.A. § 6301(a)(1)(ii), respectively.

The next day, the victim confided in a volunteer at Teen Central, a local nonprofit organization and community center, by the name of Akira Owens. After Owens received this information, the police were eventually called to follow up with the victim. Thereafter, the victim was interviewed by Lancaster County's Children's Alliance and a sexual assault forensic evidence exam was performed.

A detective, Detective Aaron Szulborski, tried to discuss with Dejesus-Gonzalez the allegations that the victim had made against him and suggested that Dejesus-Gonzalez go to the police station to facilitate that conversation. However, Dejesus-Gonzalez declined Detective Szulborski's offer. Instead, as the Detective's testimony would later indicate, Dejesus-Gonzalez told the Detective that he was asleep all night and had no idea what he was talking about. Dejesus-Gonzalez then proceeded to back away from the Detective and continued to walk away.

A little over a month after Dejesus-Gonzalez's interaction with the Detective, Dejesus-Gonzalez voluntarily went into the police station for an interview. There, aligning, at least in part, with the victim's statements and timeline of events, he admitted to giving the victim five dollars and sleeping in the same bed as her. At some point thereafter, testing of the victim's clothing the night the assault took place would reveal DNA matching that of Dejesus-Gonzalez.

Prior to trial, Dejesus-Gonzalez filed a *habeas corpus* petition, which resulted in the dismissal of several charges that had been filed against him.

Despite this dismissal, two of the three dismissed charges would be refiled at a separate docket number and later be consolidated, for trial purposes, with the prior charges. Dejesus-Gonzalez's second *habeas* petition was denied.

At trial, and relevant to the first issue raised by Dejesus-Gonzalez, Owens testified that the victim, while crying, told her that she had been sexually assaulted by Dejesus-Gonzalez. Owens' testimony conveyed that the victim indicated that upon her waking up that morning, she felt Dejesus-Gonzalez's hand in her underwear, asking if she liked what he was doing. Ultimately, over an objection, the court ruled that Owens's testimony in this regard was admissible as an excited utterance exception to the hearsay rule.

Also at trial, and germane to Dejesus-Gonzalez's second issue, Detective Szulborski recounted Dejesus-Gonzalez's actions when the Detective initially approached him insofar as he, in the middle of the conversation, proceeded to walk away. While defense counsel objected to this testimony, too, asserting a Fifth Amendment privilege against self-incrimination,[2] the court issued a curative instruction simultaneously stating that there is a right not to speak with police officers and that a use of this right should not be construed as an admission of guilt.

The jury returned a verdict of guilty at all counts. After sentencing, Dejesus-Gonzalez filed a timely notice of appeal. All parties have complied with their respective obligations under Pennsylvania Rule of Appellate

---

[2] Dejesus-Gonzalez would also make a motion for mistrial in this regard, which was denied.

- 4 -

Procedure 1925, and as such, this appeal is ripe for review.

On appeal, Dejesus-Gonzalez asks:

1. Did the trial court abuse its discretion in permitting the Commonwealth to present testimony of Akira Owens wherein the victim disclosed to her that when she awoke in the morning, she felt her uncle's hand in her underwear, as the statement was inadmissible hearsay?

2. Did the trial court err in not granting defense counsel's request for a mistrial after Detective Szulborski testified that after inviting Dejesus-Gonzalez back to the police station to talk about the allegations, Dejesus-Gonzalez refused to come back, back pedaled, continued to walk away, and turned around, where such testimony violated Dejesus-Gonzalez's Fifth Amendment right against self-incrimination?

*See* Appellant's Brief, at 7.

Dejesus-Gonzalez first asserts that the statement made by the victim to Owens does not qualify under the excited utterance exception to the rule prohibiting the admission of hearsay. Instead, given "the passage of time … and the amount of contact with other individuals … [her statement likely] was influenced by her reflective thought processes." *Id*., at 18.

Preliminarily, we note that "[t]he admission of evidence is a matter vested within the sound discretion of the trial court, and such a decision shall be reversed only upon a showing that the trial court abused its discretion." *Commonwealth v. Reid*, 811 A.2d 530, 550 (Pa. 2002). However, the trial court is prohibited from ignoring rules of evidence, and admitting into the record such evidence that runs afoul of those rules constitutes error. *See Commonwealth v. Franklin*, 580 A.2d 25, 31 (Pa. Super. 1990) (citation

omitted). If an erroneous ruling on an evidentiary issue occurs, we apply the harmless error standard. *See Commonwealth v. Mitchell*, 902 A.2d 430, 452 (Pa. 2006) (indicating that "[a]n error will be deemed harmless where the appellate court concludes beyond a reasonable doubt that the error could not have contributed to the verdict[]") (citation omitted).

Hearsay, or an out-of-court statement offered to prove the truth of the matter asserted, is "generally inadmissible in legal proceedings unless it falls under a recognized exception." *Commonwealth v. McClelland*, 233 A.3d 717, 735 (Pa. 2020). An excited utterance is one of those recognized exceptions, which our rules of evidence define as a "statement relating to a startling event or condition, made while the declarant was under the stress of excitement that it caused," Pa.R.E. 803(2), and is applicable as an exception even in situations where the declarant is available as a witness. *See id*. As to what constitutes an excited utterance, the declarant must be in the process of experiencing a startling event or be "so near the occurrence both in time and place as to exclude the likelihood of its having emanated in whole or in part from [her] reflective faculties." *Commonwealth v. Murray*, 83 A.3d 137, 157 (Pa. 2013) (citation omitted).

Our Supreme Court has previously, yet recurrently, emphasized that there is no specific time period after the startling event has concluded for a statement to qualify as an excited utterance. *See, e.g.*, *Commonwealth v. Wholaver*, 989 A.2d 883, 906-07 (Pa. 2010). Instead, "the determination is

factually driven, made on a case-by-case basis." *Id*., at 907. "The crucial question, regardless of the time lapse, is whether, at the time the statement is made, the nervous excitement continues to dominate while the reflective processes remain in abeyance." *Id*. To that end, the fact-specific inquiry requires consideration of "among other things, whether the statement was in narrative form, the elapsed time between the startling event and the declaration, whether the declarant had an opportunity to speak with others and whether, in fact, she did so." *Commonwealth v. Carmody*, 799 A.2d 143, 147 (Pa. Super. 2002) (citation omitted).

Although we generally agree with Dejesus-Gonzalez that "the passage of time will tend to diminish the spontaneity of the utterance and increase the likelihood that the utterance will be influenced by the reflective thought processes or by contact with others," *Commonwealth v. Vining*, 744 A.2d 310, 318 (Pa. Super. 1999) (*en banc*), we disagree that *Vining* serves as analogous support. In *Vining*, our Court found that a doctor's questioning of a victim "approximately ten to twelve hours after the incidents in question and after [the victim] had been in the company of numerous individuals [such as] her parents, doctors, police officers and other health care workers" did not qualify as an excited utterance. *Id*. *Inter alia*, "the fact that the utterance itself was in direct response to questions which presupposed an incriminating aspect" acted more so as statements from the doctor, rather than the victim herself. *Id*. (finding that the doctor asking "who burned you" and "who hit

- 7 -

you" instead of inquiring as to *how* the burning occurred transformed the victim into "the medium by which she could confirm the doctor's predetermined conclusions[]"). The interrogative situation in **Vining** is clearly not present here.

Instantly, the court found, first, that a startling event happened to the victim, which, in isolation, does not appear to be refuted by Dejesus-Gonzalez. The court continued:

> A mere twelve hours before [the victim's] uncle sexually assaulted her and attempted to intimidate her into silence by offering her five dollars. The [v]ictim stated that she did not tell anyone before speaking with … Owens "because as a little girl, and that happens, it is just – you don't know what a person would do, and it is scary, and I was terrified. While the declaration did not occur immediately after the incident … an appropriate measure of lapse in time from an exciting incident to an excited utterance cannot be determined. In the intervening twelve hours, there was no "confusing force operating upon the recollection of the victim that remove[d] the spontaneity which is the *sine qua non* of the excited utterance." As stated by the victim, she was terrified and did not know what to do and twelve hours later when she spoke with … Owens she was visibly upset and crying. Given the circumstances, including the child's age, the [v]ictim was still under the emotional shock of the incident[.]

Trial Court Opinion, 10/8/21, at 7 (citations to the record omitted) (citation to authority omitted).

Dejesus-Gonzalez stresses the fact that the victim's statement to Owens occurred twelve hours after the incident, that the victim transmitted what had happened to a friend prior to disclosure to Owens, and that the victim generally communicated with others earlier that day affected her thought processes, giving her time to reflect on what had happened. **See** Appellant's

Brief, at 18.

However, neither the elapsing of time nor the events prior to the victim's conversation with Owens prove fatal to the court's adjudication that the victim's statement, via Owens's testimony, qualified as an excited utterance. As the victim in this case was a child, "[t]he requirements of spontaneity … is relaxed when the child declarant is the victim of a sexual assault." **Commonwealth v. McEachin**, 537 A.2d 883, 889 (Pa. Super. 1988) (citation omitted). The relaxation of the rule is predicated on "a young child's inability to comprehend … the assault and the possibility of the child's hesitancy to discuss the matter for fear of incurring punishment." **Id**., at 889-90 (citation omitted) (alteration in original).

More broadly, "[a]s long as the statement was clearly a product of overpowering emotion caused by a traumatic and humiliating experience," **id**., at 890, it is admissible as an excited utterance. Our Court has concluded that "a six-hour delay is not enough to cast doubt on the spontaneous nature of the statement," **id**., and by applying the aforesaid precepts, "an even greater delay would not preclude introduction." **Id**.

Given the victim's affect when she reported what had happened to Owens, which included crying throughout the conversation, her age, and the unsolicited nature of her bringing forth these allegations, we find that the trial court, in exercising its discretion, properly admitted Owens's testimony as an excited utterance. Clearly, the victim's declaration to Owens about what had

happened the night before was derivative of the overpowering emotions she was still experiencing, which stemmed from an obviously traumatic event. The fact that her statement came twelve hours after the event or that she confided in one of her peers before meeting with Owens is of no moment as the overarching qualifications necessary to demonstrate an excited utterance have been met.[3] As such, Dejesus-Gonzalez's first claim fails.

In the alternative, to the extent that it was in error for the court conclude that the victim's statement to Owens was an excited utterance, other than making a bald assertion that he was substantially prejudiced and/or that the probative value of the statement was outweighed by the prejudice he endured, *see* Appellant's Brief, at 18, Dejesus-Gonzalez has not, with any level of specificity, demonstrated that such an error was harmful. Therefore, he is due no relief on that basis as well.

In his second contention, Dejesus-Gonzalez avers that he should have been granted a mistrial because of Detective Szulborski's allegedly incriminating testimony about Dejesus-Gonzalez's actions when the Detective attempted to question him the first time.

"A mistrial is an extreme remedy that is only required where the challenged event deprived the accused of a fair and impartial trial."

---

[3] In any event, as stated, *supra*, children express hesitancy in discussing sexual assault matters for fear of incurring punishment. The victim confiding in an age-related friend first, rather than an adult, reinforces this premise and does not diminish the spontaneity of what the victim told Owens.

*Commonwealth v. Laird*, 988 A.2d 618, 638 (Pa. 2010) (citation and quotation marks omitted). We review a lower court's denial of a motion for mistrial for an abuse of discretion. *See Commonwealth v. Tejeda*, 834 A.2d 619, 623 (Pa. Super. 2003). However, if the trial court gives adequate cautionary instructions, "declaration of a mistrial is not necessary." *Commonwealth v. Bryant*, 67 A.3d 716, 728 (Pa. 2013).

"The test to be applied at motion for mistrial is whether improper evidence was admitted at trial, such as would so compromise the fact finder that it would be unable to remain impartial, thereby prejudicing appellant beyond a reasonable doubt." *Commonwealth v. Dean*, 445 A.2d 1311, 1313 (Pa. Super. 1982).

After stating that the Detective introduced himself to Dejesus-Gonzalez and conveyed there was a sexual assault allegation that had been made against him, the Commonwealth asked:

[The Commonwealth]: What does [Dejesus-Gonzalez] say?

[Detective Szulborski]: He – [Dejesus-Gonzalez] states that he was asleep all night. He doesn't know what I'm talking about, as he is backing away off the porch, onto the sidewalk, onto the street.

I invited him to come back to the police station to talk about what, you know, what we learned earlier. And he refuses to come back, as he is still back-pedaling. He continues to walk away, turns around and –

N.T., 4/27/21, at 244. Thereafter, Dejesus-Gonzalez's counsel objected and motioned for a mistrial. Dejesus-Gonzalez believes that the Commonwealth

was able to use this pre-arrest silence to imply guilt.

"The Fifth Amendment was enacted to protect against self-incrimination, whether they are in custody or not, charged with a crime, or merely being questioned during the investigation of a crime." *Commonwealth v. Molina*, 33 A.3d 51, at 63 (Pa. Super. 2013) (citation omitted). "[T]he government may not use … silence as substantive evidence of guilt when a defendant chooses not to testify. . . .[That silence] may also not be used against a defendant who remained silent during the investigation of a crime." *Id*. (citation omitted).

With that in mind, the Fifth Amendment "does not impose a *prima facie* bar against *any* mention of a defendant's silence." *Id*. (emphasis added). Instead, the Fifth Amendment protects against the prosecution's exploitation of a defendant's right to remain silent. *See id*. "[A] mere reference to pre-arrest silence does not constitute reversible error where the prosecution does not exploit the defendant's silence as a tacit admission of guilt." *Commonwealth v. Adams*, 104 A.3d 511, 512-13 (Pa. 2014).

Although Dejesus-Gonzalez concedes that there are permissible ways for the Commonwealth to comment on his pre-arrest silence, such as if he were to testify and then be impeached or was made in relevant response to one of the arguments advanced at trial, neither of those situations are present. Instead, "[t]he Detective's testimony was deliberate, repetitive, detailed and the reference to … [Dejesus-Gonzalez's] silence was clear." Appellant's Brief,

at 23. Moreover, the Detective's elaboration on his physical movements, specifically with Dejesus-Gonzalez walking away from the conversation, served no other purpose than to infer guilt.

Here, immediately after the objection and subsequent sidebar had concluded, the court gave a curative instruction:

> [e]veryone has a right … not to talk to the police. Everyone, me, you, the deputy, the attorneys. Anyone has the right not to talk, or not feel compelled, or not talk to a police officer … you will not draw any negative inference against [Dejesus-Gonzalez] because of that initial reaction that he had when he communicated with the officer.

N.T., 4/27/21, at 259; *see also id*., at 257 ("Everyone, and I mean everyone, has a right not to speak to the police when the police approach for some type of contact with them. That being said, the officer did have two other contacts with [Dejesus-Gonzalez] which [Dejesus-Gonzalez] engaged in voluntarily.").

"To determine whether a cautionary instruction can cure a reference to the accused's silence, courts must consider 1) the nature of the reference to the defendant's silence; 2) how it was elicited; 3) whether the district attorney exploited it; and 4) the promptness and adequacy of the cautionary instruction." *Commonwealth v. Pearson*, 685 A.2d 551, 554 (Pa. Super. 1996) (internal quotation marks and citation omitted) (allowing for a cautionary instruction to remove the taint of "what might otherwise be a reversible error").

While Dejesus-Gonzalez accepts that the court offered a curative instruction, he merely asserts that such an instruction "was not adequate to

cure the violation" of his right against self-incrimination. Appellant's Brief, at 25. Other than, perhaps, alluding to them in passing, Dejesus-Gonzalez does not discuss the factors enumerated, *supra*. In fact, Dejesus-Gonzalez offers nothing to castigate the inadequacy of the wording used in the court's instruction.

We find that the cautionary instruction was sufficient. It was given in short temporal proximity to the Detective's statement and fully elaborated on all people's inherent ability not to speak with a police officer, such as the one that was then providing testimony in this case. Moreover, the court underlined the fact that the jury was to make no negative inference against Dejesus-Gonzalez for his actions as they were described in the Detective's testimony. Other than discussion of the impact the words had themselves, Dejesus-Gonzalez has not shown any way that the Commonwealth exploited the Detective's testimony once it had been elicited.

While the Detective probably could have omitted references to Dejesus-Gonzalez's actions and movements throughout their short initial conversation and still maintained coherency to his recounting of events, we conclude that "the detective's testimony was not intended to imply a tacit admission of guilt[,]" **Adams**, 104 A.3d at 517, as it provided a description and chronology of the investigation, which is permissible in the allowance of such testimony. "[I]t was simply utilized to recount the sequence of the investigation," "was contextual and brief[,] and did not highlight [his] silence as evidence of guilt."

*Id*., at 518.

To the extent that the Detective's statements came into conflict with Dejesus-Gonzalez's Fifth Amendment right, the approximately two at-issue sentences served nothing more than to provide background into what the Detective's investigation yielded. Dejesus-Gonzalez, himself, stated that he slept all night and did not know what the Detective was talking about. If that is all Dejesus-Gonzalez had to say at that moment, it strains credulity to find some innate implication ascribed to him by thereafter walking away from the Detective. Furthermore, the Detective used no adjectives, arguably prejudicial or otherwise, to describe the nature of Dejesus-Gonzalez's movements or any expressions that he made at that point. Instead, the Detective merely stated that Dejesus-Gonzalez backed away and afterward walked away. Without the Commonwealth or the Detective attributing anything pejorative to Dejesus-Gonzalez's silence, the complained of references provided narrative context. Furthermore, in the absence of any cogent argument to the contrary, the court's curative instruction ameliorated any negative association the jury may have placed on Dejesus-Gonzalez's actions. With all of this in mind, we find no abuse of discretion in the court's decision to deny Dejesus-Gonzalez's motion for a mistrial.

Having found no merit to either of Dejesus-Gonzalez's claims, we affirm his judgments of sentence.

Judgments of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/8/2022